UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVE SIMMS and MIKE DOLABI, individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>JERRAL "JERRY" WAYNE JONES, NATIONAL FOOTBALL LEAGUE, DALLAS COWBOYS FOOTBALL CLUB, LTD., JWJ CORPORATION, COWBOYS STADIUM, L.P., COWBOYS STADIUM GP, LLC, and BLUE & SILVER, INC.,<br><br>    Defendants. | **COMPLAINT – CLASS ACTION**<br><br>Civil Action No. |

Plaintiffs Mike Dolabi and Steve Simms (collectively, "Plaintiffs") bring this suit against Defendants National Football League, Dallas Cowboys Football Club, Ltd., JWJ Corporation, Cowboys Stadium, L.P., Cowboys Stadium GP, LLC, Blue & Silver, Inc. and Jerral "Jerry" Wayne Jones (collectively, "Defendants") to recover the damages owed to themselves and others similarly situated.

## I.    JURISDICTION

1.1    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as the proposed class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from the defendant, and seeks in the aggregate more than $5,000,000, exclusive of costs and interest.

## II.   VENUE

2.2   The events as alleged herein arose within this District, pursuant to 28 U.S.C. § 1391(a), and within this Division, and one or more of the Defendants are subject to personal jurisdiction in the District and Division to which this action has been assigned.

## III.   PARTIES

3.1   Plaintiff Steve Simms ("Simms") is an individual residing in Lycoming County, Pennsylvania, a citizen of the State of Pennsylvania and a recipient of tickets to Super Bowl XLV.

3.2   Plaintiff Mike Dolabi ("Dolabi") is an individual residing in Tarrant County, Texas, a citizen of the State of Texas and a purchaser of tickets to Super Bowl XLV.

3.3   Defendant Jerral "Jerry" Wayne Jones ("Jones") is an individual who on information and belief resides in Dallas County, Texas[1] and is the owner and general manager of the NFL team, the Dallas Cowboys.  Jones may be served with process at his residence or at One Cowboys Parkway, Irving, Texas 75063 in Dallas County, Texas.

3.4   Defendant National Football League ("NFL") is a business entity of unknown form which Plaintiffs are informed and believe is licensed to conduct business in the State of Texas. Defendant NFL may be served with process on its registered agent, CT Corporation System, 350 N. St. Paul Street, Ste. 2900, Dallas, TX 75201.

3.5   JWJ Corporation ("JWJ") is a Texas corporation which is registered to conduct business in the State of Texas and has its principal place of business at One Cowboys Parkway, Irving, Texas 75063 in Dallas County, Texas.  Defendant JWJ may be served with process on its registered agent, CT Corporation System, 350 N. St. Paul Street, Ste. 2900, Dallas, TX 75201.

3.6   Defendant Cowboys Stadium, L.P. is a Texas Domestic Limited Partnership which is registered to conduct business in the State of Texas and has its principal place of business at One Cowboys Parkway, Irving, Texas 75063 in Dallas County, Texas.  Defendant Cowboys Stadium, L.P. may be served with process on its registered agent, CT Corporation System, 350 N. St. Paul Street, Ste. 2900, Dallas, TX 75201.

---

[1] Because of the sensitive nature and need to protect Jones' personal privacy, Plaintiffs have redacted Jones' home address.

      3.7     Defendant Cowboys Stadium GP, LLC is the general partner of Defendant Cowboys Stadium, L.P. and a Texas Domestic Limited Liability Company which is registered to conduct business in the State of Texas and has its principal place of business at One Cowboys Parkway, Irving, Texas 75063 in Dallas County, Texas. Defendant Cowboys Stadium GP, LLC may be served with process on its registered agent, CT Corporation System, 350 N. St. Paul Street, Ste. 2900, Dallas, TX 75201.

      3.8     Defendant Blue & Silver, Inc. ("Blue & Silver") is the managing member of Cowboys Stadium, L.P. and a Texas corporation which is registered to conduct business in the State of Texas and has its principal place of business at One Cowboys Parkway, Irving, Texas 75063 in Dallas County, Texas. Defendant Blue & Silver may be served with process on its registered agent, CT Corporation System, 350 N. St. Paul Street, Ste. 2900, Dallas, TX 75201.

### IV.   CLASS ACTION ALLEGATIONS

      4.1     On February 6, 2011, Cowboys Stadium in Arlington, Texas was host to Super Bowl XLV. In anticipation of the Super Bowl, thousands of fans, including but not limited to Plaintiffs, paid hundreds of dollars per ticket for a seat at the game. In many instances, putative class members paid thousands of dollars to be seated at the Super Bowl and traveled to Cowboys Stadium from around the country, and in some cases the world, in order to witness the Green Bay Packers play the Pittsburgh Steelers at Super Bowl XLV.

      4.2     In addition to numerous fans who specially purchased tickets to Super Bowl XLV, hundreds of the Dallas Cowboys' best season ticket holders, including Plaintiff Dolabi, known as the "Founders" of Cowboys Stadium ("Founders"), each paid at least $100,000 per seat for a personal seat license at Cowboys Stadium, which the Cowboys and Defendant Jones represented would entitle them to the "best sightlines in the stadium" and the right to purchase a ticket to Super Bowl XLV at face value. On information and belief, the "Founders" season ticket holders collectively account for over $100 million in personal seat licenses Defendant Jones sold to help pay for the construction of the stadium, as well as over $3,000,000 in annual season ticket sales.

4.3     On Sunday, February 6, 2011, approximately 103,000 people appeared at Cowboys Stadium with tickets in hand, excited to witness Super Bowl XLV in person. On information and belief, these tickets were originally sold to the public by one or more of the Defendants.

4.4     According to statements made publicly, Defendant Jones made it a goal for Super Bowl XLV to break attendance records and conducted himself accordingly. For instance, Defendants Jones and the NFL outfitted the end zone open areas, space which is normally reserved for standing-room only tickets, with temporary seating.

4.5     On information and belief, approximately 103,219 people ultimately crammed into Cowboys Stadium to watch the Steelers-Packers game, ranking Super Bowl XLV as the fourth most attended Super Bowl and missing the all-time attendance record by 766. The attendance included 91,060 fans -- including approximately 3,000 who purchased tickets to watch Sunday's game on screens outside of Cowboys Stadium -- and 12,159 credentialed personnel (including the media and league and team officials).

4.6     Unfortunately, not all of the ticket holders to Super Bowl XLV got what they bargained for or what was promised to them. Specifically, most of the "Founders" fans, including but not limited to Plaintiff Dolabi, arrived at the stadium on Sunday to discover that Jones and the Cowboys had assigned them to seats with obstructed views and temporary metal fold out chairs, which had been installed in an effort to meet Jones' goal of breaking the attendance record. In addition, almost all of these seats lacked any reasonable view of the stadium's prized "video board," which Defendant Jones and the Cowboys routinely claim is the one of the most unique and best features of Cowboys Stadium.

4.7     Furthermore, an additional 400 ticket holders, including but not limited to Plaintiff Simms, were completely displaced from their seats at Super Bowl XLV as a result of the incomplete installation of temporary bleachers, which were deemed unsafe and unusable. On Monday, February 7, 2011, Defendants openly conceded that they knew of the seating dilemma earlier in the week and had hoped until hours before kickoff that they could be fixed but failed and refused to advise the ticket holders of the issue until they reached the stadium. Accordingly, these approximate 400 ticket holders were denied seats to the game altogether.

4.8     On information and belief, on Monday, February 7, 2011, Defendant Jones admitted to the error, stating: "The incomplete installation of temporary seats left a limited number of sections unusable for yesterday's game. Manpower and timing issues caused inconveniences to some fans. At the end of the preparations, approximately 400 fans attending the game were not able to watch from those installed seats. We deeply regret their Super Bowl experience was impacted by this error, and we share that responsibility with the NFL."  Likewise, on information and belief, NFL Commissioner Roger Goodell conceded to the wrongdoing, stating: "It was obviously a failure on our behalf, and we have to take responsibility for that."  On information and belief, NFL Executive Vice President Eric Grubman admitted that the NFL knew well before the game that the seats were not going to be available stating that he "felt in the middle of the week that it was going to be a problem."

4.9     In an effort to compensate the displaced ticket holders, Defendants promised to give displaced ticket holders free tickets to next year's Super Bowl and a refund of triple the cost of the $800 face value of the ticket to the 400 fans denied seats at Super Bowl XLV.  However, this monetary sum is wholly insufficient to compensate Plaintiffs for all of their expenses, including but not limited to travel costs, or for their disappointment and frustration in not being able to properly enjoy the Super Bowl.  Moreover, triple the face value does not in many cases begin to approach the cost of the tickets paid by many class members.  In addition, due to a looming labor dispute between the NFL and its players, the NFL cannot presently guarantee that next year's Super Bowl will even be played, let alone which teams will participate.

4.10    On information and belief, Defendant Jones and the Cowboys were fully aware well before February 6, 2011 that the Founders had been assigned to temporary, obstructed view seats and yet concealed it from the Founders.  Indeed, in written correspondence with the Founders relating to seat assignments for the Super Bowl, the Cowboys curiously made no mention of the fact that many of the Founders, if not all of them, would be assigned to temporary, obstructed view seats.  On information and belief, the Founders have been offered nothing to compensate them for their obstructed and illegitimate seats.

## V.  FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

### (By all Plaintiffs Against all Defendants)

5.1   The allegations of paragraphs 1.1 through 4.10 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated ticket holders.

5.2   Plaintiffs entered into an agreement with Defendants whereby Defendants sold to Plaintiffs tickets for seats to Super Bowl XLV on February 6, 2011.  These tickets comprise valid and enforceable contracts entitling Plaintiffs to seats at Sunday's game.

5.3   Plaintiffs fully and properly performed all conditions, covenants, and acts required to be performed on their part in accordance with the terms and conditions of the ticket purchases.

5.4   Defendants breached their obligations under the agreement, including, among other breaches, by refusing to provide any seats to the displaced ticket holders and by providing obstructed view seats without proper advance disclosure.

5.5   As a direct and proximate result of Defendants' breaches, Plaintiffs have sustained damages including but not limited to the cost of their tickets and travel-related expenses, in a total amount to be determined at trial.

5.6   Plaintiffs accordingly seek relief set forth herein.

## VI.  SECOND CLAIM FOR RELIEF

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (By all Plaintiffs Against all Defendants)

6.1   The allegations of paragraphs 1.1 through 5.6 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated ticket holders.

6.2   As set forth above, Plaintiffs entered into an agreement with Defendants whereby Defendants sold to Plaintiffs tickets for seats to Super Bowl XLV on February 6, 2011.  These tickets comprise valid and enforceable contracts entitling Plaintiffs to seats at the Super Bowl.

6.3     Plaintiffs performed all, or substantially all, of the conditions, covenants, and acts required to be performed on their part in accordance with the terms and conditions of the ticket purchases.

6.4     Defendants unilaterally interfered with Plaintiffs' rights to receive the benefits of their agreement by refusing to provide any seats to the displaced ticket holders and by providing obstructed view seats without proper advance disclosure.

6.5     As a direct and proximate result of Defendants' breaches, Plaintiffs have sustained damages including but not limited to the cost of their tickets and travel-related expenses, in a total amount to be determined at trial.

6.6     Plaintiffs accordingly seek relief set forth herein.

## VII.   THIRD CLAIM FOR RELIEF
## FRAUD, DECEIT AND CONCEALMENT
### (By all Plaintiffs Against all Defendants)

7.1     The allegations of paragraphs 1.1 through 6.6 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated ticket holders.

7.2     In selling Plaintiffs tickets for Super Bowl XLV, Defendants made affirmative representations to Plaintiffs that they would have a seat inside of Cowboys Stadium to personally witness the game.

7.3     Defendants concealed from Plaintiffs the fact that they knew at least several days prior to the February 6, 2011 Super Bowl that the seats that Plaintiffs had been assigned to, as set forth on Plaintiffs' ticket stubs, were actually temporary, fold out metal chairs which in many instances offered only substantially and materially obstructed views and/or were not going to be completed in time, resulting in many Plaintiffs being denied a seat to personally witness Super Bowl XLV.

7.4     Even though Defendants were aware of these facts, they continued to deceive Plaintiffs by representing to them, up to and including game time, that they would have seats with unobstructed views to personally witness Super Bowl XLV.

7.5     Defendants knew that these representations were false well before game time on February 6, 2011.  Indeed, on information and belief, such knowledge is demonstrated by statements made by Defendant Jones and Mr. Goodell, among others, that Defendants withheld this information as part of a failed attempt to finalize seating arrangements before kickoff.

7.6     Plaintiffs relied on Defendants' representations in paying money for seats to Super Bowl XLV and spending the time, vacation time from work, and substantial money to travel to Arlington, Texas in order to attend the Super Bowl.

7.7     As a result, Plaintiffs have sustained substantial damages including but not limited to the cost of their tickets and travel-related expenses in a total amount exceeding $5,000,000, to be determined according to proof at trial.

7.8     Defendants' conduct as described herein was extreme and outrageous, entitling Plaintiffs to punitive damages.

## VIII.   FOURTH CLAIM FOR RELIEF
## VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES ACT, V.T.C.A. Bus. & Comm. § 17.41 *et seq.*
### (By all Plaintiffs Against all Defendants)

8.1     The allegations of paragraphs 1.1 through 7.8 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated ticket holders.

8.2     Plaintiffs are "consumers" as they sought and acquired tickets to Super Bowl XLV that were supposed to provide them with seats offering the represented views of the playing field and video board.

8.3     Defendants are proper "persons" or Defendants under the Texas Deceptive Trade Practices Act, who either used or employed false, misleading, deceptive or unconscionable acts or practices, or were directly connected with the transaction with Plaintiffs.

8.4     Defendants committed multiple violations and wrongful acts under the Texas Deceptive Trade Practices Act, including the following:

    (a)    Making or committing, false, misleading or deceptive acts and/or practices, including but not limited to violations of Tex. Bus. & Com. Code § 17.46(b) (5), (7), (9), (10), (12), (20), and (24). Plaintiffs relied on such acts and/or practices to their detriment.

    (b)    Breach of contract and covenant of good faith and fair dealing in ticket sales.

    (c)    Committing unconscionable act(s) in connection with ticket sales to Plaintiffs.

8.5    Plaintiffs would show that the violation and actions of Defendants were a producing cause of their damages, as will be alleged with particularity.

8.6    Plaintiffs would show that the violations and actions of Defendants were done intentionally or knowingly, entitling Plaintiffs to treble damages.

## IX.    CONDITIONS PRECEDENT

9.1    All conditions proceeding to Plaintiffs' claims for relief have been performed or have occurred.

## X.    DAMAGES AND RELIEF SOUGHT

10.1    Plaintiffs hereby incorporate paragraphs 1.1 through 9.1, verbatim, as set forth at this point.

10.2    Plaintiffs seek to recover actual damages outlined below from Defendants as a direct and proximate result of the unlawful conduct of Defendants.

10.3    Plaintiffs would show that the conduct of Defendants constitutes "gross negligence," "malice," and "actual malice" under Texas law. Plaintiffs therefore request the assessment of exemplary or punitive damages in an amount as may be necessary to punish Defendants and to deter other with similar lawless inclinations in the future.

10.4    Plaintiffs seek to recover the following damages and obtain the following relief from Plaintiffs:

    (a)    Economic loss suffered by Plaintiffs;

    (b)    Treble damages under the Texas Deceptive Trade Practices Act;

    (c)    Punitive or exemplary damages;

    (d)    All reasonable and necessary attorneys' fees;

    (e)    Court costs; and

    (f)    Pre and post-judgment interest.

## XI.  PRAYER

WHEREAS, PREMISES CONSIDERED, Plaintiffs pray the Defendants be cited in terms of law to answer herein and that upon final trial, Plaintiffs have and recover all damages which they are entitled, all costs of Court, attorneys' fees, pre and post-judgment interest, and for further and other relief, whether in law or in equity, to which Plaintiffs may show themselves justly entitled.

DATED:  February 8, 2011

        s/ Michael J. Avenatti
Michael J. Avenatti (*Pro Hac Vice* pending)
Bar Number:  206929
Lisa A. Wegner (*Pro Hac Vice* pending)
Bar Number:  209917
EAGAN AVENATTI, LLP
450 Newport Center Drive, Second Floor
Newport Beach, CA 92660
E-Mail:     mavenatti@eoalaw.com
            lwegner@eoalaw.com
Telephone:  949-706-7000
Facsimile:  949-706-7050

and

        s/ Christopher S. Ayres
Christopher S. Ayres
Texas Bar No. 24036167
R. Jack Ayres, Jr.
Texas Bar No. 01473000
LAW OFFICES OF R. JACK AYRES, JR., P.C.
4350 Beltway Drive
Addison, Texas 75001
E-Mail:     csayres@ayreslawoffice.com
Telephone:  972-991-2222
Facsimile:  972-386-0091

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial of all causes by jury.

s/ Michael J. Avenatti
Michael J. Avenatti (*Pro Hac Vice* pending)
Bar Number: 206929
Lisa A. Wegner (*Pro Hac Vice* pending)
Bar Number: 209917
EAGAN AVENATTI, LLP
450 Newport Center Drive, Second Floor
Newport Beach, CA 92660
E-Mail:    mavenatti@eoalaw.com
           lwegner@eoalaw.com
Telephone: 949-706-7000
Facsimile: 949-706-7050

and

s/ Christopher S. Ayres
Christopher S. Ayres
Texas Bar No. 24036167
R. Jack Ayres, Jr.
Texas Bar No. 01473000
LAW OFFICES OF R. JACK AYRES, JR., P.C.
4350 Beltway Drive
Addison, Texas 75001
E-Mail:    csayres@ayreslawoffice.com
Telephone: 972-991-2222
Facsimile: 972-386-0091