# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| STEVE SIMMS, BRUCE IBE, WES LEWIS, CONSTANCE YOUNG, ROBERT FORTUNE, and DEAN HOFFMAN, *Individually and on Behalf of All Others Similarly Situated*, | § § § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. 3:11-CV-0248-M |
| v. | § § | (Consolidated with 3:11-CV-345-M) |
| JERRAL "JERRY" WAYNE JONES, BLUE & SILVER INC., DALLAS COWBOYS FOOTBALL CLUB, LTD., JWJ CORPORATION, COWBOYS STADIUM, L.P., COWBOYS STADIUM, G.P., LLC, and NATIONAL FOOTBALL LEAGUE, | § § § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the National Football League's Motion to Dismiss All Tort Claims in Plaintiffs' Consolidated First Amended Complaint [Docket Entry #72] and the Cowboys Defendants' (Jerry Jones, Blue & Silver, Inc., Dallas Cowboys Football Club, LTD., JWJ Corporation, Cowboys Stadium, L.P., Cowboys Stadium, G.P., LLC) Motion to Dismiss [Docket Entry #76]. For the reasons explained below, the NFL's Motion to Dismiss is **GRANTED in part** and the Cowboys Defendants' Motion to Dismiss is **GRANTED**.

### I.  Background and Procedural History

Given that the Court is considering Motions to Dismiss, Plaintiffs' version of the facts is taken as true at this stage in the litigation.[1] On November 30, 2011, the Court granted in part and

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

denied in part Defendants' Motion to Dismiss [Docket Entry #66].[2]  In doing so, the Court permitted Plaintiffs to re-plead their fraud and negligent misrepresentation claims, to provide the specificity Rule 9(b) requires, and to re-plead a breach of contract claim against the Cowboys Defendants.  On December 21, 2011, Plaintiffs filed their First Amended Complaint [Docket Entry #69], in which they set forth claims against the NFL and the Cowboys Defendants for breach of contract, fraudulent inducement, fraudulent concealment, negligent misrepresentation by affirmative misrepresentation and concealment, and negligence, in the alternative to their breach of contract claim.  Plaintiffs Laffin, Wanta, and Burgwin also pleaded a Texas Deceptive Trade Practices Act ("DTPA") claim against the NFL and the Cowboys Defendants.  On January 18, 2012, the NFL and the Cowboys Defendants filed the subject Motions to Dismiss.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[3]  While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[4]  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[5]  Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[6]

Rule 9(b) requires that a party "alleging fraud or mistake . . . must state with particularity

---

[2] The Court incorporates by reference the facts described in its November 30, 2011 Memorandum Opinion and Order.
[3] *Iqbal*, 556 U.S. at 677-78 (citations omitted).
[4] *Id.* at 677-79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[5] *Twombly*, 550 U.S. at 570.
[6] Fed. Rule Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678-80.

the circumstances constituting fraud or mistake."[7] The Fifth Circuit has interpreted Rule 9(b) to require, at a minimum, that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud.[8] However, the Fifth Circuit has also stated that the "time, place, contents, and identity standard is not a straitjacket for Rule 9(b)," concluding that Rule 9(b) is context-specific and flexible.[9]

### III.     Breach of Contract Claim Against the Cowboys Defendants

Plaintiffs' breach of contract claim arises out of the purchase by Plaintiffs of a Super Bowl game ticket. That ticket, however, is a contract only between the NFL and a ticket purchaser (or a purchaser's assignee). Plaintiffs attempt to plead a contract between the Plaintiffs and the Cowboys Defendants, alleging that "the Cowboys Defendants received five percent (5%) of the available Super Bowl game tickets from the NFL for resale to fans" and some of those were sold to "one or more Plaintiffs."[10] In support, Plaintiffs have provided invoices from Cowboys Stadium, L.P., for the sale of tickets and parking for the Super Bowl, directing payment to the "Dallas Cowboys."[11] Accepting Plaintiffs' version of the facts as true, the fact that the Cowboys Defendants resold tickets, issued by the NFL, to "one or more Plaintiffs" does not alter the nature of the contract. The Super Bowl game ticket is a contract between the NFL and a ticket purchaser (or a purchaser's assignee). Without plausible allegations that the Cowboys Defendants were anything more than third-party sellers of tickets to an NFL event, Plaintiffs have not successfully pleaded the existence of a contract between the Cowboys Defendants and any Plaintiff. Therefore, the Motion to Dismiss Plaintiffs' breach of contract

---

[7] *See, e.g.*, *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009); *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir. 2003); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).
[8] *Thompson*, 125 F.3d at 903 (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).
[9] *See Grubbs*, 565 F.3d at 188, 190 (internal quotation marks omitted).
[10] First Amended Complaint at 27-28 [Docket Entry #69].
[11] The invoices do not state the ticket quantity, section, row, seats, or purchaser, that information having been redacted by Plaintiffs. Defendants state that they have asked Plaintiffs for unredacted copies, but Plaintiffs have not provided them. Cowboys Defendants' Motion to Dismiss at 2, FN1 [Docket Entry #76].

claim against the Cowboys Defendants is **GRANTED**. Since Plaintiffs have already been given leave to replead, the dismissal of these claims is with prejudice.

### IV. The Independent Injury Rule and Defendants' Duty to Plaintiffs

Defendants argue that Plaintiffs cannot recover for fraudulent concealment and negligent misrepresentation, because they are foreclosed by the independent injury rule. Under the independent injury rule, when the injury is only the economic loss to the subject of a contract, the action sounds only in contract. However, if a duty exists separately and independently of the contract, a tort claim may also be asserted.[12]

Here Plaintiffs allege that Defendants did not disclose that the tickets sold to Plaintiffs were for (a) temporary seating, with the location of the seats subject to change depending on the location of available space in the stadium,[13] and/or (b) obstructed, and that Defendants knew, but did not disclose these facts to Plaintiffs.[14] Plaintiffs allege they would not have expended the money and time they did on purchasing tickets and traveling to the game had they known the facts. In support of their position that the claims are viable, Plaintiffs refer to this Court's decision in *Nazareth Int'l Inc. v. J.C. Penney Corp., Inc.*[15] In *Nazareth*, the Court found that the independent injury rule did not foreclose claims for negligent misrepresentation, finding the duty owed by defendant, and the resulting injury from breach of that duty, to be "independent from the subject matter of the contract."[16]

In *Nazareth,* plaintiff alleged a representation, after the initial contract, that certain chargebacks would be waived by defendant. Plaintiff allegedly relied on that representation, which was not honored, and as a result, plaintiff's letters of credit were revoked, making it

---

[12] *Southwestern Bell Telephone Co. v. Delaney*, 809 S.W.2d 493, 494 (Tex. 1991).
[13] First Amended Complaint at 30-31 [Docket Entry #69].
[14] *Id.* at 32-39 [Docket Entry #69].
[15] No. 3:04-CV-1265-M, 2005 U.S. Dist. LEXIS 14473 (N.D. Tex. July 19, 2005).
[16] *Id.* at *24.

unable to take new orders or fulfill previous ones, and causing it to terminate employees.  This Court found those injuries to be separate from those flowing from the underlying contract, and that the plaintiff had alleged facts to support a claim that the defendant had a legal duty to correct its false representations.  Here, the duties alleged are owed only by virtue of the contractual relationship between a ticket purchaser and the NFL, and Plaintiffs' alleged injuries arise only from that contract with the NFL. Therefore, Plaintiffs' tort claims for fraudulent concealment and negligent misrepresentation as to the NFL are foreclosed by the independent injury rule and are **DISMISSED with prejudice**.

Since the Court has found the alleged duties and injuries in this case to have arisen from the contractual relationship between the NFL and the Plaintiffs, and that there is no contract between the Cowboys Defendants and the Plaintiffs, no duty to disclose the nature of the tickets is owed by the Cowboys Defendants to the Plaintiffs, as a matter of law.  While some of the Cowboys Defendants would owe certain duties to Plaintiffs, such as the duty to provide a safe venue at Cowboys Stadium, the Cowboys Defendants do not have any duties concerning the disclosure to Plaintiffs of obstructions at certain seats or the nature of the seating for Plaintiffs' tickets.  Those duties are owed by the contracting entity, the NFL.  Therefore, Plaintiffs' fraudulent concealment and negligent misrepresentation claims against the Cowboys Defendants are also **DISMISSED with prejudice**.

**V. Fraudulent Inducement**

In contrast to Plaintiffs' other tort claims, the independent injury rule does not strictly apply to the tort of fraudulent inducement.  As the Supreme Court of Texas has explained it, "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations…. [This] legal duty…is separate and

independent from the duties established by the contract itself."[17] Thus, "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."[18]

To state a claim for fraudulent inducement, Plaintiffs must show: 1) Defendants made a false material misrepresentation; 2) Defendants knew the representation was false when made or made it recklessly without knowledge of its truth; 3) Defendants intended to induce Plaintiffs to act upon the representation; and 4) Plaintiffs actually and justifiably relied upon the representation, and thereby suffered injury.[19] Under Rule 9(b), Plaintiffs must plead fraudulent inducement with particularity, identifying the allegedly fraudulent statements, the speaker, when and where the statements were made, and why the statements were fraudulent.[20]

Plaintiffs allege that the false representations were on the tickets, which stated that Plaintiffs would be able to enjoy pregame festivities beginning at 1:00 p.m. and would have assigned seats for the game, to begin at 5:00 p.m. Plaintiffs also allege that by "omitting any reference to obstructed views, consistent with NFL guidelines requiring seats with obstructed views be disclosed to purchasers, Defendants affirmatively represented that the views of the game and the Video Replay Board…would not be obstructed."[21] Plaintiffs contend the Defendants knew these representations were false when made or were made recklessly, that Defendants intended to induce Plaintiffs to buy the tickets based on this information, and that each of the Plaintiffs relied on those representations to their detriment. The Court finds that those allegations satisfy Rule 9(b)'s pleading requirements.

---

[17] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 46 (Tex. 1998).
[18] *Id.* at 47.
[19] *Bohnsack v. Varco, LP*, 668 F.3d 262, 277-278 (5th Cir. 2012).
[20] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (citations omitted).
[21] First Amended Complaint at 29 [Docket Entry #69].

Plaintiffs claim they did not receive the seats identified on their tickets, or had seats with obstructed views of the field and/or Video Replay Board. To state a claim for fraudulent inducement, Plaintiffs must allege facts that show Defendants knew the statements on the tickets were false or made in reckless disregard of the truth, and that Defendants intended to induce Plaintiffs to purchase tickets based upon those representations.

To show that at the time of sale Defendants did not intend to make the temporary seats available, Plaintiffs allege that Defendants did not apply for required permits or submit timely plans to local authorities for approval. The Court agrees with the NFL that Plaintiffs' allegations as to the availability of the temporary seats do not support a plausible inference of fraudulent inducement. Plaintiffs allege that Defendants' original plan called for the construction of temporary seats, a building permit was obtained, and most of the temporary seats were installed. Without alleging facts supporting the allegation that Defendants did not intend to construct the temporary seats for which tickets were sold, Plaintiffs cannot recover on a theory of fraudulent inducement as to temporary seats that were not completed and approved by game day. A "mere failure to perform a contract is not evidence of fraud."[22] The Court finds that Plaintiffs' theory of fraudulent inducement as to temporary seating is not plausible.[23] The NFL had nothing to gain by tricking fans into purchasing tickets that it did not plan on having available. On the day of the Super Bowl, construction of the seating was continuing.[24] Plaintiffs do not allege that tickets were sold to Plaintiffs after Defendants knew that the seats would not be completed. In fact, Plaintiffs allege the tickets were sold 90 to 120 days before the Super Bowl.[25] Therefore, Defendants' Motion to Dismiss Plaintiffs' fraudulent inducement claims as to the availability of

---

[22] *Formosa Plastics Corp.*, 960 S.W.2d at 48("A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made.").
[23] *See Druyan v. Jagger*, 508 F.Supp.2d 228, 241 (S.D.N.Y. 2007) (granting a motion to dismiss on claims related to a canceled Rolling Stones concert).
[24] NFL's Motion to Dismiss at 3-4 [Docket Entry #72] *citing* Plaintiffs' Amended Complaint.
[25] Plaintiffs' Opposition Brief at 7 [Docket Entry #78].

temporary seating is **GRANTED and these claims are dismissed with prejudice.**

As to the fraudulent inducement claim relating to obstructed views, Plaintiffs allege that the NFL, through its Ticket Exchange website, specifically required third-party sellers to disclose whether any ticket listed for sale on the Ticket Exchange had an obstructed view. Plaintiffs whose seats had obstructed views state that their tickets did not reveal obstructions, nor did they otherwise receive a disclosure of obstruction. Plaintiffs also argue that the Defendants had a duty to disclose the material facts that certain seats had obstructed views.[26]

For purposes of a motion to dismiss, the Court must view the facts in the light most favorable to a plaintiff. If Plaintiffs' allegations are proven true, they had no way of knowing that their tickets had obstructed views[27] until they arrived at the stadium. At this stage of the proceedings, those Plaintiffs who had tickets with obstructed views, who claim they were unaware of those obstructions prior to purchase, that non-obstruction was a material fact on which they relied, and that the NFL knew the seats had obstructed views, have stated a claim for fraudulent inducement. Plaintiffs who had obstructed view seats have stated a plausible claim for fraudulent inducement as it relates to the omission of obstruction information from their tickets, and to that degree, the NFL's Motion to Dismiss is **DENIED**.

The Court has found that Plaintiffs' contract was only with the NFL, and thus, any claim that Plaintiffs were fraudulently induced to purchase tickets can be only against the NFL. As discussed above, the Cowboys Defendants did not have any duties to Plaintiffs related to seat obstructions. Plaintiffs' claim for fraudulent inducement against the Cowboys Defendants is **DISMISSED with prejudice**.

---

[26] Plaintiffs' Opposition Brief at 8 [Docket Entry #78].
[27] For purposes of this Motion to Dismiss, the Court does not make distinctions on the type of obstruction claimed, whether it is for the Video Replay Board or the playing field.

## VI.     Texas Deceptive Trade Practices Act (DTPA) Claim

Plaintiffs Laffin, Wanta, and Burgwin (the DTPA Plaintiffs) assert claims on behalf of themselves and similarly situated ticket holders against all Defendants for violations of the DTPA.  Defendants move to dismiss the DTPA claims for these reasons: 1) the claims are barred by the independent injury rule; 2) an adequate DTPA demand has not been made, requiring abatement; 3) the tickets do not constitute "goods or services" under the DTPA; and 4) failure to state a claim for a false or misleading practice, breach of an express or implied warranty, or unconscionable conduct.

The Texas Supreme Court has "repeatedly held that a mere breach of contract, without more, is not a DTPA violation."[28] For the reasons discussed above, the Court concludes that the economic loss rule bars Plaintiffs' tort claims, except for fraudulent inducement with respect to obstructed view seating.  This bar applies to DTPA claims as well, except as to fraudulent inducement-type claims.

To state a DTPA claim, Plaintiffs must allege that the NFL "fail[ed] to disclose information concerning goods or services which was known at the time of the transaction" and the "failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."[29]  Here, Plaintiffs allege Defendants failed to disclose information concerning the tickets that induced them into purchasing them.  For the same reasons discussed above as to fraudulent inducement, a failure to disclose obstruction information can form the basis of a violation under the DTPA.

Defendants have raised the issue of whether the Super Bowl ticket constitutes a "good or service" under the DTPA.  In *Sells v. Six Flags Over Tex., Inc.*, Judge Fitzwater found that

---

[28] *Rocky Mt. Helicopters v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998); *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996).
[29] Tex. Bus. & Com. Code § 17.46(b)(24) (2012).

plaintiffs, who purchased tickets to Six Flags, were "consumers" who received the "services" of the amusement park. [30] This Court similarly concludes Plaintiffs are consumers of services. [31]

However, the named Plaintiffs asserting the DTPA claims are members of the "Displaced Class", and they do not bring a DTPA claim based upon obstructed view seating.  Therefore, the Court raises the issue of standing *sua sponte* and finds that these Plaintiffs do not have standing to assert DTPA claims for failure to disclose that certain seats had obstructed views.

Assuming that the DTPA claims for breach of an express or implied warranty and unconscionable conduct are not barred by the economic loss rule, Plaintiffs do not plead the existence of any actionable express or implied warranty.  A "mere promise to perform does not constitute an express warranty" and there is no implied warranty under the law that has been breached.[32]  Further, as a matter of law, Plaintiffs' allegations are not of unconscionable conduct.[33]

Therefore, because they do not have standing, Plaintiffs' DTPA claim for failure to disclose is **DISMISSED with prejudice** as to them, **but without prejudice** as to other potential Plaintiffs who had obstructed view seating and who may choose to assert such claims.  Plaintiffs' other DTPA claims are **DISMISSED with prejudice.**

### VII.  Negligence

Plaintiffs plead negligence against all Defendants.  Since the negligence claim against the NFL is pleaded only in the alternative to their breach of contract claim, which is still pleaded, the Court does not reach the alternative claim against the NFL at this time. The Court will address the negligence claim only as to the Cowboys Defendants.  In Texas, a cause of action for

---

[30] No: 3:96-CV-1574-D, 1997 U.S. Dist. LEXIS 23747 (N.D. Tex. Aug. 14, 1997).
[31] Whether the evidence will, in fact, support Plaintiffs' version of the facts remains to be determined.
[32] *Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1375 n.14 (5th Cir. 1987).
[33] Tex. Bus. & Com. Code § 17.45 (2012).

negligence requires three elements: a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by that breach.[34] Plaintiffs argue that the Cowboys Defendants owed a legal duty to Plaintiffs when they voluntarily assumed the responsibility for approval, construction, installation, completion, and safety of the temporary seats. Plaintiffs rely on the voluntary or gratuitous undertaking doctrine, which states "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby."[35] Texas courts have used the Restatement (Second) of Torts to limit liability for the injury in a voluntary undertaking to "physical harm."[36]

      The Cowboys Defendants argue that Plaintiffs do not allege any physical harm that resulted from the alleged actions taken by the Cowboys Defendants, and that Plaintiffs cannot recover for purely economic harm. The Court agrees. The gratuitous undertaking doctrine does not allow recovery for the type of economic harm for which Plaintiffs seek recovery. If the negligence claim stemmed from allegations that the temporary seating was unsafe and a Plaintiff was injured, a negligence action might very well be available. Texas courts addressing the issue have followed the Restatement,[37] and this Court declines to extend the gratuitous undertaking doctrine to the claims against the Cowboys Defendants.[38] Therefore, Plaintiffs' claim for negligence against the Cowboys Defendants is **DISMISSED with prejudice**.

---

[34] *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).
[35] *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119-20 (Tex. 1976).
[36] *Id. See also* Restatement (Second) of Torts § 324A (1965) "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for **physical harm** resulting from his failure to exercise reasonable care to protect his undertaking, if…." (emphasis added). *See also* Restatement (Second) of Torts § 323 (1965).
[37] *Stroud v. Meister*, No. 3:97-cv-0860-L, 2001 WL 282764 (N.D. Tex. Mar. 16, 2001).
[38] *But see, Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365, 377 n.10 (Tex.App.—Austin 1982, writ ref'd n.r.e.)(citing cases in which non-Texas courts have permitted recovery by analogy for cases involving only economic harm).

## VIII.   Conclusion

For the reasons stated above, the NFL's Motion to Dismiss is **GRANTED in part** and the Cowboys Defendants' Motion to Dismiss is **GRANTED**.   Plaintiffs may proceed with their contract claims and their fraudulent inducement claims, as they pertain to alleged obstructed view seating, against the NFL only.

**SO ORDERED.**

July 19, 2012.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS