UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRUCE IBE, | § | |
| CONSTANCE YOUNG, JASON MCLEAR, | § | |
| ROBERT FORTUNE, | § | |
| DEAN HOFFMAN, KEN LAFFIN, DAVID | § | |
| WANTA, and REBECCA BURGWIN, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 3:11-CV-248-M |
| | § | |
| | § | |
| NATIONAL FOOTBALL LEAGUE, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant National Football League's Motion for Partial Summary

Judgment and Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction [Dkt. No.

272]. Having reviewed the Motions, pleadings, and evidence before the Court, Defendant's

Motions are **GRANTED in part** and **DENIED in part**.

## I.     FACTS AND PROCEDURAL BACKGROUND

On February 6, 2011, Cowboys Stadium[1] played host to Super Bowl XLV. The National

Football League ("NFL") produced tickets for the Super Bowl, which, on the front side, stated

the face value of the ticket, a seat location, the proper gate to enter the stadium, and a note that

the "Stadium Gates Open at 1:00 PM."[2] The back side of the tickets contained "Super Bowl

Ticket Terms," which stated, in relevant part:

> SUPER BOWL TICKET TERMS. This ticket grants entry in the stadium and a spectator
> seat for the game. Admission may be refused or ticket holder ejected at the sole
> discretion of the National Football League, subject to refund (or without refund if the
> ticket holder is disorderly or fails to comply with these ticket terms or security measures).

---

[1] The stadium is now named AT&T Stadium.
[2] Def.'s Mot. Summ. J. Addendum A.

THE DATE AND TIME OF THE GAME IS SUBJECT TO CHANGE BY THE NFL IN
ACCORDANCE WITH ITS SCHEDULING POLICIES OR AS A RESULT OF
OTHER ACTIONS OR EVENTS BEYOND THE NFL'S CONTROL.[3]

Additionally, each ticket included a unique barcode, which security staff at Cowboys Stadium scanned upon entry by ticketholders at various security checkpoints around the perimeter of the stadium.  Upon presentment of the tickets, the scanners recorded the seat location, time of the scan, and whether the ticket was accepted or rejected, all of which information was saved in a database.[4]  After a successful scan, the ticketholder was admitted inside the stadium.[5]

To accommodate a potentially record-breaking crowd, the plans for Super Bowl XLV called for the installation of approximately 13,000 temporary seats.[6]  However, the temporary seats were not completely installed by the day of the game, which resulted in the NFL delaying the opening of the gates to 2:20 p.m., rather than the planned opening time of 1:00 p.m.[7]  The football game was scheduled for kickoff at 5:31 p.m.,[8] and that time apparently was not changed, although the record is not definitive on that subject.  Nonetheless, the incomplete installation of temporary seating affected certain ticketholders, some of whom are Plaintiffs in this suit.

Some Plaintiffs—Bruce Ibe, Ken Laffin, and David Wanta—allege that they were denied seats altogether, despite having tickets for the game ("Displaced Plaintiffs").  Bruce Ibe claims he purchased two tickets to attend the Super Bowl, one for himself and one for his daughter.[9]  Neither Ibe nor his daughter were actually given seats in the stadium to watch the Super Bowl.[10]

---

[3] *Id.*
[4] Def.'s Ex. 4 at App. 140, ¶ 4 (Williams Decl.).
[5] Def.'s Ex. 1 at App. 2, ¶ 3 (Supovtiz Decl.).
[6] *Id.* at App. 1.
[7] *Id.* at App. 2–3.
[8] Def.'s Ex. 1-C at App. 27 ("Game Day Timeline").
[9] Pls.'s Ex. 8 at App. 70 (Ibe Dep.).
[10] *Id.* at App. 71–72.

Ken Laffin and David Wanta each purchased a ticket and traveled together to the Super Bowl.[11] Like the Ibes, neither Mr. Wanta nor Mr. Laffin were given seats in the stadium to watch the game.[12]

Another Plaintiff—Constance Young—purchased tickets for herself, her husband, and her daughter to attend the game, and alleges they were all delayed in getting to their seats ("Delayed Plaintiff").[13] Although she claims they attempted to reach their seats well before the kickoff, she alleges it was delays associated with the installation and completion of their seats that kept them from entering the stadium earlier than they did.[14] According to ticket scanners and the NFL, Young, her husband, and her daughter cleared a security checkpoint at 4:22 p.m., and proceeded to their seats at that time.[15] As discussed below, Young also alleges that hers and her husband's seats had obstructed views.

Other Plaintiffs—Rebecca Burgwin and Jason McLear—were relocated, along with their family members, from their original seats to alternative seats ("Relocated Plaintiffs"). Rebecca Burgwin and her husband purchased four tickets to attend Super Bowl XLV—two for themselves and two for their daughters.[16] Their purchased tickets were located in Section 215A, Row 28.[17] After Mr. and Mrs. Burgwin entered the stadium at 4:25 p.m. and proceeded to Section 215A, a staff member informed them their seats were not available, and told them they

---

[11] Pls.'s Ex. 10 at App. 94 (Laffin Dep.); Pls.'s Ex. 14 at App. 148 (Wanta Dep.).
[12] Pls.'s Ex. 14 at App. 155 (Wanta Dep.).
[13] Young purchased four tickets for the game. Young and her husband used the two tickets in Section 427A, Row 32, Seats 5–6, and Young's daughter used the ticket in Section 429A Row 13, Seat 12. Young sold the remaining ticket to her husband's niece. Pls's Ex. 16 at App. 168–69. Young is not asserting a claim for the ticket she sold to her husband's niece. Def.'s Ex. 7-P at App. 295.
[14] Pls.'s Ex. 16 at App. 172–74 (Young Dep.).
[15] Def.'s Ex. 7-F at App. 200 (Ticket Scan Data). Although the scan data shows a single ticket for Section 427A, Row 32, Seat 6, and two tickets for Section 429A, Row 13, Seats 11–12, Young says they all entered the gates at the same time. Pls.'s Ex. 16 at App. 173 (Young Dep.).
[16] Pls.'s Ex. 2 at App. 24–25 (Burgwin Dep.).
[17] *Id.* at App. 28.

would need to obtain replacement tickets at Gate F.[18]  Upon collecting their replacement tickets, Mr. and Mrs. Burgwin proceeded to their new seats in Section 400, where they arrived before kickoff.[19]  Their daughters entered the stadium at approximately 5:10 p.m. and received replacement tickets in Sections 100 or 200, but their new seats were not next to each other nor near their parents.[20]  Jason McLear purchased three tickets to Super Bowl XLV for himself, his wife, and his son, all of which were in Section 230A, Row 24, Seats 14–16.[21]  The McLears entered the stadium around 4:00 p.m., and mistakenly sat in the wrong seats for approximately forty minutes.[22]  They were then instructed by an usher to obtain replacement tickets at Gate F.[23]  While Mrs. McLear obtained the replacement tickets, Mr. McLear and his son walked around the stadium, and then waited in the lounge area.[24]  The McLears arrived at their replacement seats in Section 448, Row 17, Seats 16–18 at approximately 6:12 p.m., which was during the first quarter.[25]

Finally, some Plaintiffs—Robert Fortune, Dean Hoffman, and Constance Young—did, in fact, receive the seats described on their tickets, but they claim to have had an obstructed view of the field and/or video board ("Obstructed View Plaintiffs").[26]  Mr. Fortune bought two tickets for himself and his wife in Section 241A, Row 23, Seats 1–2.[27]  Those tickets contained no statement that the seats had restricted views.[28]  Mr. Fortune avows that an aluminum railing and

---

[18] Def.'s Ex. 7-F at App. 201 (Ticket Scan Data); Pls.'s Ex. 2 at App. 28 (Burgwin Dep.).
[19] Pls.'s Ex. 2 at App. 29 (Burgwin Dep.).
[20] Pls.'s Ex. 2 at App. 29 (Burgwin Dep.).
[21] Pls.'s Ex. 12 at App. 131 (McLear Dep.).
[22] *Id.* at App. 134, 137.
[23] *Id.*
[24] *Id.* at App. 138.
[25] *Id.* at App. 140–41.
[26] The NFL concedes that certain tickets were marked "Restricted Views" on their face as an "industry standard" and a basis for discounting the price.  Pls.'s Ex. 18 at App. 202 (Supovitz Dep.).
[27] Pls.'s Ex. 4 at App. 40–41 (Fortune Dep.).
[28] *Id.* at App. 40.

concrete support beam obstructed his and his wife's views of the field.[29]   Mr. Hoffman makes

similar allegations.   The three tickets he purchased for himself and his two children were located

in Section 218A, Row 23, Seats 16–18, and he claims the view from those seats was obstructed

by a concrete overhang.[30]   Hoffman's tickets did not contain a statement that the seats had

restricted views.[31]   The view from Mr. and Mrs. Young's seats was allegedly obstructed by a

large Pepsi advertisement hanging from the top of the stadium, which not only obstructed the

Youngs' view of the field, but also obstructed their view of the stadium's video board.[32]   Those

tickets also lacked any statement about a restricted view of the field or the video board.[33]

The NFL accepted responsibility to certain ticketholders who experienced difficulties as a

result of the failure to complete the temporary seating.[34]   After the game, the NFL offered

reimbursement options to the Displaced Plaintiffs, the Delayed Plaintiff, and the Relocated

Plaintiffs.[35]   The Displaced Plaintiffs were offered a choice of three options:

(1)   Payment of $2,400 (three times the face value of a regular ticket), plus one free,

transferable ticket to the next NFL Super Bowl game; or

(2)   One free, non-transferable ticket to any future Super Bowl game of the fan's choice,

plus round trip airfare and hotel accommodations provided by the NFL; or

---

[29] *Id.* at App. 42.
[30] Pls.'s Ex. 6 at App. 57–58 (Hoffman Dep.).
[31] *Id.* at App. 55.
[32] Pls.'s Ex. 16 at App. 175 (Young Dep.); Def.'s Ex. 7-DD at 671, 683 (Young Dep.).
[33] Pls.'s Ex. 16 at App. 169.
[34] Def.'s Ex. 1-F at App. 31–33 (Letter to Displaced Fans).
[35] *Id.*

(3) The greater of either $5,000 or the amount of expenses actually incurred by the ticketholder, including the ticket price, all travel expenses, food expenses at a daily rate of $100, and hotel expenses.[36]

The Relocated Plaintiffs and Delayed Plaintiff were offered two options:

(1) Payment of the face value of a regular game ticket; or

(2) One free ticket to any future Super Bowl game of the fan's choice.[37]

To accept these offers, Plaintiffs were required to release the NFL from any and all claims against the NFL for any hardship or inconvenience caused by the incident.[38]

The Obstructed View Plaintiffs received no settlement offer.

Plaintiffs filed suit on February 8, 2011, and on May 6, 2011, they filed a Consolidated Class Action Complaint alleging breach of contract, breach of the covenant of good faith and fair dealing, fraud, deceit and concealment, and negligent misrepresentation.[39] On November 30, 2011, the Court granted in part, and denied in part, Defendants' Motion to Dismiss, dismissing with prejudice Plaintiffs' claims for breach of an implied covenant of good faith and fair dealing, while giving Plaintiffs the opportunity to replead their claims for breach of contract against the Cowboys Defendants and their fraud and negligent misrepresentation claims against all Defendants.[40]

On December 21, 2011, Plaintiffs filed their First Amended Complaint, asserting claims against the NFL and Cowboys Defendants for breach of contract, fraudulent inducement, fraudulent concealment, negligent misrepresentation by affirmative misrepresentation and

---

[36] Dkt. No. 19-1 at 2–3 ("Plan for Reimbursement for Fans Displaced . . . .").
[37] Dkt. No. 30 at 5 ("Plan for Reimbursement for Ticket Holders . . . Who Were Delayed Stadium Entry").
[38] Dkt. No. 19-1 at 11; Dkt. No. 30 at 11.
[39] Dkt. No. 1; Dkt. No. 50.
[40] Dkt. No. 66.

concealment, and negligence, in the alternative to their claims for breach of contract.[41]  Plaintiffs Laffin, Wanta, and Burgwin also brought claims under the Texas Deceptive Trade Practices Act ("DTPA") against both the NFL and the Cowboys Defendants.[42]

On July 19, 2012, the Court granted the Cowboys Defendants' Motion to Dismiss, and granted in part the NFL's Motion to Dismiss, permitting all Plaintiffs to proceed against the NFL for breach of contract, and permitting only the Obstructed View Plaintiffs to proceed with their fraudulent inducement claims.[43]  On February 28, 2013, Plaintiffs filed their Consolidated Second Amended Complaint.[44]

On July 9, 2013, the Court denied Plaintiffs' Motion for Class Certification.[45]  The NFL now moves for partial summary judgment, and partial dismissal for lack of subject matter jurisdiction, against all Plaintiffs, except for breach of contract claims asserted by Fortune and Hoffman as Obstructed View Plaintiffs.

The NFL argues that the Displaced Plaintiffs, the Relocated Plaintiffs, the Delayed Plaintiff, and the Obstructed View Plaintiffs have no claims for breach of contract under Texas law and that their damages are limited to a refund of the face value of the ticket and incidental expenses.  The NFL also argues that it is entitled to judgment as a matter of law on the Obstructed View Plaintiffs' fraudulent inducement claims.  Alternatively, the NFL argues that the claims of the Displaced Plaintiffs, Delayed Plaintiff, and Relocated Plaintiffs are moot because the NFL's reimbursement offers were in excess of what Plaintiffs would be entitled to recover under the law.

---

[41] Dkt. No. 69.
[42] *Id.*
[43] Dkt. No. 89.
[44] Dkt. No. 182.
[45] Dkt. No. 269.

## II.   LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46]  If a reasonable jury could return a verdict for the non-moving party, then there is a genuine issue of material fact.[47]  Where the summary judgment movant will not have the burden of proof at trial, the movant bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, but the movant is not required to negate elements of the nonmoving party's case.[48]  Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is improper, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[49]

For determination of a summary judgment motion, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists."[50]  A mere "scintilla of evidence" will not meet the non-movant's burden.[51]  Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[52]  The court is not to assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts," and is to grant summary judgment "in any case where critical evidence is so

---

[46] Fed. R. Civ. P. 56(a).
[47] *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).
[48] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998).
[49] *See* Fed. R. Civ. P. 56(a); *Anderson,* 477 U.S. at 250; *Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[50] *Lynch Props.*, 140 F.3d at 625 (citation omitted).
[51] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994) (en banc) (per curiam).
[52] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[53]

Rule 56 does not require the district court to sift through the record to find evidence to support a party's opposition to summary judgment.  "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists."[54]

## III.    ANALYSIS

### A.  Plaintiffs' Claims for Breach of Contract

#### 1.  Displaced Plaintiffs

In support of its Motion for Summary Judgment, the NFL argues that what controls is the language on the tickets, which provides that "[a]dmission may be refused or ticket holder ejected at the sole discretion of the National Football League, subject to refund (or without refund if the ticket holder is disorderly or fails to comply with these ticket terms or security measures)."[55] Therefore, the NFL argues, there can be no recovery for breach of contract because the NFL's actions with respect to the Displaced Plaintiffs were consistent with the terms of the contract.[56] Specifically, the NFL argues the value of the three reimbursement options it offered the Displaced Plaintiffs exceeded the refund described in the terms of the ticket.[57]  Additionally, the NFL argues that, as a matter of law, the ticket was a license, revocable at any time.[58]  The

---

[53] *Little*, 37 F.3d at 1075.
[54] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted); *Tranman, Inc. v. Griffin*, No. 3:11–CV–1046–M, 2013 WL 944502, at *3–4 (N.D. Tex. Mar.12, 2013) (Lynn, J.); *Enis v. Bank of Am., N.A.*, No. 3:12–CV–0295–D, 2013 WL 1721961, at *2 (N.D. Tex. Apr.22, 2013) (Fitzwater, C.J.).
[55] Def.'s Mot. Summ. J. Addendum A.
[56] Def.'s Mot. Summ. J. at 22.
[57] *Id.*
[58] *Id.* at 23.

Displaced Plaintiffs respond that the ticket was not a revocable license, but rather was a binding contract giving rise to the full range of remedies recoverable under the law of contracts.[59]

The NFL admits it did not provide seats to the Displaced Plaintiffs,[60] but argues that there was no breach because the NFL then offered a refund as required by the terms of the tickets.[61] This argument confuses the issue, in that it attempts to negate a breach by showing an offer of remedy.   That the NFL *offered* a refund does not change the fact that the NFL breached the contract when it failed to provide the Displaced Plaintiffs with a spectator seat for the game.   In other words, the NFL did not refuse admission, but instead just failed to provide Plaintiffs with a seat.  Regarding the remedy offered, as the Court already discussed in its November 30, 2011 Order, the "fact that the contract provides a party with a particular remedy does not, of course, necessarily mean that such remedy is exclusive."[62]   "[A] construction which renders the specified remedy exclusive should not be made unless the intent of the parties that it be exclusive is clearly indicated or declared."[63]   The "subject to refund" language on the ticket provides a particular remedy, but it is not clearly indicated on the tickets that a refund is the exclusive remedy.  As a result, Plaintiffs' remedies are not limited to a refund.

The Court recognizes that, generally, a ticket to an entertainment venue is a revocable license, terminable at the will of the proprietor.[64]   Indeed, some Texas courts have gone so far as

---

[59] Pls.'s Resp. at 23–24.

[60] Dkt. No. 269 (*Simms v. Jones*, 296 F.R.D. 485, 500 (N.D. Tex. 2013) (citing Class Certification Hr'g Tr. 10:13–16)).

[61] Def.'s Reply at 2–3.

[62] Dkt. No. 66 (*Simms v. Jones*, No. 3:11-CV-0248, 2011 WL 5978594, at *3 (N.D. Tex. Nov. 30, 2011) (citing *Pelto Oil Co. v. CSX Oil & Gas Corp.*, 804 S.W.2d 583, 586 (Tex. App.—Houston [1st Dist.] 1991, writ denied)).

[63] *Id.* (citing *Vandergriff Chevrolet Co., Inc. v. Forum Bank*, 613 S.W.2d 68, 70 (Tex. Civ. App.—Fort Worth 1981, no writ)).

[64] *See Terrell Wells Swimming Pool v. Rodriguez*, 182 S.W.2d 824, 825–26 (Tex. Civ. App.—San Antonio 1944, no writ) (explaining that a ticket to a swimming pool is merely a revocable license, subjecting the ticketholder to ejection without unnecessary force and a refund); *see also Kelly v. Dent Theaters, Inc.*, 21 S.W.2d 592, 593 (Tex. Civ. App.—Waco 1929, no writ) ("A ticket holder's right to enter and remain at a theater, race track, or private park is a revocable license.").

to describe a proprietor's power to exclude or eject ticketholders as plenary.[65]  Should a

ticketholder's license be revoked, his only remedy lies in breach of contract.[66]  However, some

courts limit recovery to the ticket price plus incidental expenses incurred in purchasing the ticket

and attending or attempting to attend the performance.[67]

The Court finds the revocable license rule to be inapplicable here, at least to the extent

the NFL relies on it to limit Plaintiffs' recovery to a refund and incidental expenses provided in

the NFL's offers.   Here, the ticket was not simply a permit to enter a place of amusement,

entailing no obligation to supply a show or performance.[68]  Rather, the NFL agreed to provide "a

spectator seat *for the game*."[69]  The ticket, by its terms, was something more than a mere

revocable license.[70]  Alternatively, because this is a situation where fans foreseeably travel long

distances and incur substantial expenses to attend a Super Bowl, a right to revoke the license

should be denied on equitable grounds.[71]

---

[65] *Sw. Broad. Co. v. Oil Ctr. Broad. Co.*, 210 S.W.2d 230, 233 (Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.) ("The power of the proprietor to exclude or eject spectators is plenary.") (citing *Terrell Wells Swimming Pool*, 182 S.W.2d at 825–26).

[66] *Kelly*, 21 S.W.2d at 594 ("[The ticketholder] was entitled to recover for the breach of his contract the amount paid by him for his ticket of admission . . . ."); *Deprez v. Brewer*, No. 05-94-01540-CV, 1995 WL 547094, at *3 (Tex. App.—Dallas Sept. 8, 1995, no writ) (mem. op., not designated for publication) ("[T]he ticket holder's only remedy is an action for breach of contract."); *see also Ganci v. New York City Transit Auth.*, 420 F.Supp.2d 190, 198 (S.D.N.Y. 2005) (holding that tickets are "in the nature of contract," while declining to discuss the difference between a contract and a license); *see also Kennedy Theater Ticket Service v. Ticketron, Inc.*, 342 F. Supp. 922, 926 (E.D. Pa. 1972) (finding a ticket to be a "contract between the proprietor and the purchaser of a ticket, and whatever contractual duties grow out of such relation the proprietor is bound to perform or respond in damages for breach of contract," not in trespass or tort) (quoting *Taylor v. Cohn*, 47 Ore. 538, 540 (1906)).

[67] *Terrell Wells Swimming Pool*, 182 S.W.2d at 826.

[68] *Jordan v. Concho Theatres*, 160 S.W.2d 275, 276 (Tex. Civ. App.—El Paso 1941, no writ) (explaining that "a ticket . . . is in the nature of a permit to enter a place of amusement . . . but carries with it no obligation to do anything—not even supply the show or performance").

[69] *See id.* (explaining that an implied obligation between the seller and purchaser can be found in the written instrument itself, which must contain a "contract to do the thing for the performance of which the action is brought."); Def.'s Mot. Summ. J. Addendum A (emphasis added).

[70] The NFL appears to concede as much in its Reply.  Def.'s Reply at 3 ("The absence of any breach as to the Displaced Claimants is based on the plain language of the ticket, not the default law of revocable licenses *that would apply in the absence of the applicable contractual language*." (emphasis added)).

[71] *See Hall v. Willmering*, 209 S.W. 226 (Tex. Civ. App.—Amarillo 1919, writ ref'd) (explaining that courts of equity have protected licensees against the arbitrary exercise of revocation where the licensee made expenditures in good faith).

Most cases on which the NFL relies, including those from Texas,[72] to support a revocable license ruling here are distinguishable.[73]  In *Kelly v. Dent Theaters*, the Waco Court of Appeals specifically considered the remedies available to a patron who, having done nothing improper, was wrongfully ejected from a place of amusement.[74]  The Waco Court of Appeals held that where the patron was wrongfully struck, shoved, and forcibly ejected, despite conducting himself in a lawful and orderly manner, he could recover both the amount paid for his ticket and tort damages for the manner of his ejection.[75]  The court noted that such recovery was available even if the ticket was revocable at the discretion of the theatre.[76]  Here, the NFL breached its contract, and Plaintiffs claim to have incurred costs beyond the price of the ticket that would otherwise be recoverable for breach of contract.  Plaintiffs' recovery should include recovery of such costs that can be shown to have been caused by the breach.

The NFL also relies on *Bickett v. Buffalo Bills, Inc.* to limit its obligation to no more than a refund and incidental expenses.[77]  In *Bickett*, the tickets at issue were season tickets for three football games that had been cancelled altogether because of the NFL player strike.[78]  Here, the Super Bowl was not cancelled at all, let alone by an event outside the NFL's control.  Had the

---

[72] *Terrell Wells Swimming Pool*, 182 S.W.2d at 826 (denying injunctive relief to plaintiff who was refused admission to swimming pool because he was Hispanic); *Concho Theatres*, 160 S.W.2d at 276 (finding the theatre ticket contained only an implied obligation between the seller and purchaser); *Deprez*, 1995 WL 547094, at *2–3 (noting that plaintiff "offered no evidence of any incidental costs or expenses connected with purchasing his ticket or attending the concert").

[73] In *Johnson v. Tampa Sports Authority*, the Eleventh Circuit considered whether a season ticketholder's right to be free of unreasonable searches was violated by stadium pat-down security measures, which were a condition of entry. 530 F.3d 1320, 1329 (11th Cir. 2008).  In *Stern v. Cleveland Browns Football Club, Inc.*, the court considered whether a season ticketholder was entitled to a refund when the Browns moved from Cleveland to Baltimore.  No. 95-L-196, 1996 WL 761163, at *1 (Ohio Ct. App. Dec. 20, 1996).  In *Yarde Metals, Inc. v. New England Patriots Ltd. P'ship*, the Massacussets Court of Appeals considered the relationship between season ticketholders and ticket issuers in the context of the plaintiff's season tickets not being renewed because of disorderly conduct.  834 N.E.2d 1233, 1225 (Mass. App. Ct. 2005).

[74] 21 S.W.2d 592, 593–94 (Tex. Civ. App.—Waco 1929, no writ).

[75] *Id.* at 594.

[76] *Id.*

[77] 472 N.Y.S.2d 245 (Sup. Ct. 1983).

[78] *Id.* at 246.

Super Bowl been cancelled because of the ice storm that occurred in the days surrounding the game, *Bickett* would be more relevant to this case.[79]  Also, the language on the tickets in *Bickett* expressly described each ticket as a revocable license.[80]  No such language was on Plaintiffs' tickets.  Therefore, the Court finds the tickets here to be of a contractual nature, entitling Plaintiffs to recover the amount they paid for their tickets and other pecuniary damages they suffered, including costs incurred, as a direct and proximate result of the breach.[81]

The NFL argues that any refund should be limited to the original sales price or the face value of the ticket, thereby excluding any amount over face value Plaintiffs may have paid to third party sellers.  To support its argument, the NFL relies on the law of assignment, which provides that an assignee may only obtain the right, title, and interest of his assignor.[82]  It follows, according to the NFL, that an assignee can recover only those damages potentially available to his assignor, who the NFL claims is the third party who bought from the NFL.  The Displaced Plaintiffs respond that there was no assignment and, therefore, they should recover actual damages for breach of contract.  The Displaced Plaintiffs also argue that it was natural, probable, and foreseeable that some fans would buy presold tickets, paying many times the face value of the tickets.  To support their argument, Plaintiffs cite NFL Commissioner Roger

---

[79] *Mayer v. Belichick*, 605 F.3d 223, 236 (3d Cir. 2010) ("This therefore is not a case where, for example, the game or games were cancelled, strike replacement players were used, or the professional football teams themselves did something nonsensical or absurd, such as deciding to play basketball.") (citations omitted).

[80] *Bickett*, 472 N.Y.S.2d at 247 ("This ticket is a revocable license; admission may be refunded or terminated at any time.").

[81] *See Ganci*, 420 F.Supp.2d at 198; *see also Kennedy Theater Ticket, Inc.*, 342 F. Supp. at 926; 27A AM. JUR. 2D *Entertainment and Sports Law* § 46 ("The result is that the ticket holder's only remedy is for breach of contract; and the damages recoverable where a person is ejected without assault or abuse are limited to the amount paid for the ticket, and other legal pecuniary damages suffered as a direct and proximate result of the breach.") (citing *Boswell v. Barnum & Bailey*, 135 Tenn. 35, 185 S.W. 692 (1916); *De La Ysla v. Publix Theatres Corporation*, 26 P.2d 818 (1933); *Finnesey v. Seattle Baseball Club*, 210 P. 679, 30 A.L.R. 948 (1922)).

[82] *Sw. Bell Tel. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909, 920 (Tex. 2010).

Goodell who, during the Super Bowl XLVII, acknowledged that tickets are being sold on the secondary market at multiples of the face value.[83]

Under Texas law, actual damages may be recovered when loss is the natural, probable, and foreseeable consequence of a defendant's conduct.[84]  Plaintiffs have produced some evidence that it was foreseeable to the NFL that ticketholders would incur costs above the face value of the tickets in attending the game.  Therefore, it will be for the trier of fact to determine (a) whether secondary market purchases were foreseeable to the NFL and (b) what amount of loss was caused by the NFL's breach.[85]  Therefore, because Plaintiffs have raised a genuine issue of material fact as to whether the amounts paid above face value were foreseeable by the NFL and, thus, recoverable as remedies for breach of contract, the Court denies the NFL's Motion for Summary Judgment with respect to the Displaced Plaintiffs.[86]  The NFL is alleged to have breached its contract with the Displaced Plaintiffs and Plaintiffs' remedies are not limited to a refund, nor to the face value of the tickets.  The precise damages recoverable will be determined by the jury within the parameters of the law.

---

[83] Pls.'s Ex. 67 at App. 670 (NOLA.com, *NFL Commissioner Roger Goodell talks about Super Bowl, player safety in press conference*, The Times-Picayune, February 2, 2013,
http://www.nola.com/superbowl/index.ssf/2013/02/nfl_commissioner_roger_goodell_2.html.).
[84] *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981) (citing *Hadley v. Baxendale*, 9 Exch. 341, 354 (1854)).
[85] The Court declines to address whether limiting resale above face value would be permissible under Texas law, but notes that some professional sports teams appear to have done so.  Anthony J. Dreyer & Michael P. Schwartz, *Whose Game Is It Anyway: Sports Teams Right to Restrict (And Control) Ticket Resale*, 17 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 753, 774 (2007) (explaining that several teams, including the Chicago Bulls, "prohibit the resale of tickets above the face-value printed on the ticket, and have notified ticket holders that those caught reselling or attempting to resell tickets are subject to having their tickets revoked").  The Court can only presume the NFL declined to do so because it benefits from the resale of tickets.  *Id.* at 780–81 (explaining that contracts with secondary ticket services are beneficial to teams for two primary reasons:  (1) sponsorship revenues; and (2) goodwill generated by having an easy outlet for fans to sell their tickets).
[86] Because the Court finds that original purchasers holding their tickets may recover consequential damages for breach of contract, it follows under the law of assignment that such damages be available to re-purchasers as well.

14

### 2.  Relocated Plaintiffs

The NFL argues that as a matter of law, there can be no breach of contract as to Relocated Plaintiffs, relying on the express terms of the ticket, which provide, "this ticket grants entry in the stadium and a spectator seat for the game."[87]  Because the Relocated Plaintiffs were granted entry into the stadium and given spectator seats for the game, the NFL argues there is no actionable material breach.  Alternatively, the NFL argues that even if the Court treats the Relocated Plaintiffs as having been refused entry, the NFL provided them with a refund consistent with the language on the tickets.  In response, the Relocated Plaintiffs argue that their tickets promised each of them a specific seat, and because they were denied that specific seat when they were relocated, the NFL breached its contract with them.  The Relocated Plaintiffs claim they were relocated to seats of lesser quality and experienced delays while exchanging their tickets.

It is undisputed that Burgwin and McLear were provided spectator seats for the game, but different language from their tickets assigned them specific seats.[88]  Reading the front and back of the tickets in conjunction, the denial to the Relocated Plaintiffs of the seats specified on their tickets breached their contract.  Also, nothing in the ticket terms purported to provide the NFL with discretion to *relocate* ticketholders.[89]  Therefore, the Court finds that the Relocated Plaintiffs, like the Displaced Plaintiffs, can recover the full range of proven damages allowed by law for breach of contract.

To the extent the Relocated Plaintiffs premise their breach of contract argument on delays in getting to their seats caused by the ticket-exchange process, Mr. and Mrs. Burgwin offer no evidence showing a breach by the NFL.  Mr. and Mrs. Burgwin concede that they arrived at their

---

[87] Def.'s Mot. Summ. J. Addendum A.
[88] Def.'s Mot. Summ. J. Addendum A.
[89] *Id.*

replacement seats before kickoff.[90]  However, the Burgwins' daughters and the McLears have shown there is at least a genuine issue of material fact as to whether the delays in the exchange process caused them to miss part of the game.

The NFL concedes that the McLears arrived at the South Ticket Office to obtain replacement tickets at approximately 5:00 p.m., which was almost 30 minutes before kickoff.[91] However, McLear testified that he and his family did not arrive at their replacement seats until 6:11 p.m.[92]  There is a fact question as to whether the delay between when the McLears began the ticket-exchange process and when they say they arrived at their replacement seats caused the McLears to suffer damages.  Similarly, the NFL concedes that the Burgwins' daughters had their tickets scanned by 5:09 p.m., more than twenty minutes before kickoff.[93]  However, Mrs. Burgwin testified, and referenced photographic evidence, that her daughters did not arrive at their replacement seats until the second quarter.[94] Again, the fact that substantial time passed between when the Burgwins' daughters entered the stadium and when they arrived at their replacement seats establishes a fact issue as to whether the delay was caused by the ticket-exchange process, and if so, what damages the Burgwins suffered.

It will be for the jury to determine whether the ticket-exchange process caused the McLears and Burgwin's daughters to miss part of the game, and if so, what damages they incurred as a result of the NFL giving them replacement tickets.

---

[90] "[Mr. and Mrs. Burgwin] received their replacement tickets, reentered the stadium, and climbed up to their seats on the 400 level, [as] the players were coming out of the tunnel on to the field."  Pls.'s Resp. at 19 (citing Pls.'s Ex. 2 at App. 29; Pls.'s Ex. 78 at App. 804, ¶6).  The delays in giving them replacement seats did not cause them to miss the game and, as a result, cannot be the basis of a breach of contract claim.  *See infra* at Section III.A.3. Delayed Plaintiff (holding the ticket does not provide a contractual right to pre-game festivities).
[91] Def.'s Mot. Summ. J. at 11 (citing Def.'s Ex. 7-Y at App. 507, 513 (McLear Dep.)).
[92] Def.'s Ex. 7-Y at App. 514 (McLear Dep.).
[93] Def.'s Mot. Summ. J. at 10 (citing Def.'s Ex. 7-Q at App. 308, 310 (Burgwin Dep.); Def.'s Ex. 7-F at App. 201 (Ticket Scan Data)).
[94] Def.'s Ex. 36 at App. 310 (Burgwin Dep.).

16

### 3.  Delayed Plaintiff

Plaintiff Constance Young premises her breach of contract claim on delays she encountered in entering the stadium, allegedly causing her to miss certain pre-game festivities. The NFL relies on the terms of the ticket that afforded the NFL the unilateral right to change the times of the game and gate opening.[95]  For the reasons stated below, the Court holds that Young cannot sustain a claim for breach of contract insofar as she alleges a delay in getting to her seat.

Young alleges a breach of contract by the NFL for not granting her entry to the stadium at 1:00 p.m.[96]  To support her claim, Young refers to the tickets terms, which stated that ticketholders would be able to enter the stadium at 1:00 p.m.[97]  Young was not granted admission to the stadium until two hours later, after certain pre-game festivities had concluded.[98]  The NFL counters that the tickets provided no right to pre-game festivities, but instead, provided only a revocable right to a "spectator seat for the game."[99]  According to the NFL, the 1:00 p.m. time on the ticket was to enable the NFL to manage crowd flow and shepherd fans through the Super Bowl security measures.[100]  Further, the NFL points to the part of the ticket which expressly provides, "the date and time of the game is subject to change by the NFL . . . .," which the NFL argues necessarily includes the right to change the scheduled time for opening stadium gates.[101]

The Court finds that the tickets did not require the NFL to grant any fan, including Young, entry to the stadium at 1:00 p.m. for pre-game festivities.  Rather, the ticket provided a "spectator seat for the game."  To suggest the ticket included a right to pre-game festivities is

---

[95] Def.'s Mot. Summ. J. Addendum A.
[96] Pls.'s Resp. at 20.
[97] Def.'s Mot. Summ. J. Addendum A.
[98] Def.'s Ex. 7-F at App. 200 (Ticket Scan Data).
[99] Def.'s Mot. Summ. J. Addendum A.
[100] Def.'s Ex. 1 at App. 2 (Supovitz Decl.).
[101] Def.'s Mot. Summ. J. at 34 (citing *Senna Hills, Ltd. v. Sonterra Energy Corp.*, No. 03-08-00219-CV, 2010 WL 143408, at *13 (Tex. App.—Austin Jan. 15, 2010, no pet.) (explaining that Texas courts construe contracts in "common-sense fashion").

contrary to the express language of the ticket, which reserved to the NFL the right to change the time of the game and, necessarily, the time of entry to the stadium.[102]  Common sense dictates that the right to change the time of the game included the right to change the time of the opening of the gates.[103]  Here, Young was not refused admission, and she offers no evidence to rebut the NFL's showing that she passed through security over one hour before kickoff.[104]  Because the uncontroverted evidence shows that Young was granted entry into the stadium and access to her seat over one hour before the game started, she cannot sustain a breach of contract claim premised on the delay in getting to her seat for pre-game festivities.

### 4. Obstructed View Plaintiffs

The NFL concedes there is a fact issue as to whether the NFL breached its contract with Fortune and Hoffman if, as alleged, their views of the field were obstructed.  The NFL moves for summary judgment only on Young's breach of contract claim based on having an obstructed view of the video board and field.

The NFL argues that it is entitled to judgment as a matter of law because the ticket's terms only entitled its holder to a spectator seat *for the game*, not a spectator seat to *view the video board*.  The NFL claims it had no contractual obligation to provide Young with an unobstructed view of the video board.  In response, Young argues that the ticket is ambiguous when it says the "ticket grants a spectator seat for the game."  Thus, according to Young, whether the ticket also entitled the ticketholder to an unobstructed view of the video board is a fact question for the jury to decide.

---

[102] The Court notes that the ticket clause at issue in Young's breach of contract claim for delay is a separate clause than the clause affording the NFL the right to refuse admission subject to refund.  The latter clause sought to prospectively limit Plaintiffs' remedies, which, as already discussed, the Court finds unenforceable in this case. Plaintiffs do not similarly challenge the legality of the clause giving the NFL the right to change the time of the game.

[103] The Court agrees that the NFL's hypothetical illustrates the illogic of the Delayed Plaintiff's position—had the game been moved to Monday, would the NFL still be bound to open the gates at 1:00 p.m. on Sunday?

[104] Def.'s Ex. 7-F at App. 200.

For the same reasons the Court found that ticketholders did not have a contractual right to attend pre-game festivities, the Court finds that there was no contract for an unobstructed view of the video board at Cowboys Stadium.  Under Texas law, "whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."[105]  The Court cannot add to the essential terms of the contract,[106] and the Court finds there is no ambiguity with respect to the term "[spectator seat for the] game"—Young's tickets entitled she and her guests to a view of the game on the field, not a view of the game on the video board.[107]  Had the video board not been functioning, Young would not have had a claim against the NFL, which had no contractual obligation to provide Young with any view of the video board.[108]

Young also claims breach of contract because the view of the field from her seat was obstructed.  In support of its Motion, the NFL argues that a photograph by, and a Declaration of, Jacob Batsell, a game attendee seated near Young, shows that Young's view of the field was unobstructed.[109]  Young responds by pointing out that Mr. Batsell was not in Young's seats and that her seat did not offer a clear view of the entire playing field.  She offers proof that another fan, William Breseman, who sat seven rows in front of Young, claims his view of the field, and those of ticketholders behind him, was obstructed.[110]

There is a genuine issue of material fact as to whether Young's seats had an unobstructed view of the field.  It will be for the jury to determine whether Young's view of the field was

---

[105] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

[106] *See MPG Petroleum, Inc. v. Crosstex CCNG Mktg., Ltd.*, No. 13-05-609-CV, 2006 WL 2831018, at *3 (Tex. App.—Corpus Christi Oct. 5, 2006, pet. denied) (stating that courts are not permitted to create a contract where none exists); *Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App.—San Antoino 2002, pet. denied).

[107] *See Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002).

[108] That the NFL attempted to have its seating contractors provide seats with unobstructed views of the video board does not create a contract between the NFL and Young.

[109] Def.'s Ex. 6 at App. 147, ¶ 4 (Batsell Decl.).

[110] Pls.'s Ex. 65 at App. 657–58 ¶¶ 3, 5–6 (Breseman Decl.).

similar to that of Batsell or whether, as Breseman and she claim, the view from her seats was obstructed.  The Court thus denies the NFL's motion for summary judgment on Young's claim of breach of contract for an obstructed view.

## B.  Obstructed View Plaintiffs' Claims for Fraudulent Inducement

The NFL moves for summary judgment on the fraudulent inducement claims brought by all Obstructed View Plaintiffs.  They premise their fraudulent inducement claims on the NFL's alleged failure to disclose on the tickets that their views would be obstructed.

The NFL argues it is entitled to judgment as a matter of law because the Obstructed View Plaintiffs have provided no evidence of an affirmative misrepresentation or actionable omission where there was a duty to disclose, and because Obstructed View Plaintiffs have failed to produce evidence of the NFL's fraudulent intent.  In response, the Obstructed View Plaintiffs claim that the NFL's omission of any reference to obstructed views on the tickets amounted to an affirmative representation that the views of the game and the video board, as seen from the seats they purchased, were unobstructed.  As already discussed with respect to Plaintiff Young's breach of contract claim for an obstructed view of the video board, the Court finds the NFL had no contractual obligation to provide seats with a view of the video board.  Because Plaintiffs point to no evidence outside the ticket terms that imposes a duty on the NFL to disclose that a view of the video board was obstructed, the Court holds that their fraudulent inducement claims relating to the video board fail as a matter of law.  Therefore, the Court will only address the fraudulent inducement claims relating to Plaintiffs' views of the field.

To prove a claim for fraudulent inducement under Texas law, a plaintiff must show:  the defendant (1) made a false material representation; (2) knew the representation was false when made, or made recklessly, without knowledge of its truth; (3) with intent to induce the plaintiff to

act upon the representation; and (4) the plaintiff justifiably relied upon the representation, thereby suffering injury.[111]

Generally, under Texas law, a failure to disclose information does not amount to a fraudulent misrepresentation absent a fiduciary or confidential relationship between the parties.[112] Here, there is no fiduciary or confidential relationship, but this is not a situation where the NFL simply failed to disclose that the Obstructed View Plaintiffs' seats had restricted views. In effect, the terms of the ticket amounted to a representation that the seats purchased did not have restricted views, since tickets with obstructed views were so marked.[113]

Plaintiffs must also demonstrate that there is a genuine issue of material fact with respect to the NFL's intent in not designating the Obstructed View Plaintiffs' seats as obstructed or restricted. As the Texas Supreme Court has held, a "mere failure to perform a contract is not evidence of fraud."[114] To prevail, Plaintiffs must show that the NFL had no intention of performing as represented.[115] "[T]he evidence presented must be relevant to [the defendant's] intent at the time the representation was made."[116] "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the

---

[111] *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277–78 (5th Cir. 2012).

[112] *Bradford v. Vento*, 48 S.W.3d 749, 755–56 (Tex. 2001); *Becker v. Nat'l Educ. Training Group, Inc.*, No. 3:01–CV–1187–M, 2002 WL 31255021, at *6 (N.D. Tex. Oct. 7, 2002) (Lynn, J.) ("The Fifth Circuit has repeatedly held that under Texas law a failure to disclose is not actionable as fraud unless a fiduciary or confidential relationship exists between the parties.").

[113] *Rimade Ltd. v. Hubbard Enterprises, Inc.*, 388 F.3d 138, 143 (5th Cir. 2004) ("[A] duty to speak arises by operation of law when 'one party voluntarily discloses some but less than all material facts, so that he must disclose the whole truth, i.e., material facts, lest his partial disclosure convey a false impression.'"); *see also Lewis v. Bank of Am. NA,* 347 F.3d 587, 588 (5th Cir. 2003) ("A duty to speak arises by operation of law when . . . one party voluntarily discloses some but less than all material facts, so that he must disclose the whole truth, i.e., all material facts, lest his partial disclosure convey a false impression."); *Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459, 477 (Tex. App.—Fort Worth 2004, no pet.); *Pellegrini v. Cliffwood-Blue Moon Joint Venture, Inc.*, 115 S.W.3d 577, 580 (Tex. App.—Beaumont 2003, no pet.).

[114] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998).

[115] *Coffel v. Stryker Corp.*, 284 F.3d 625, 633–34 (5th Cir. 2002) (quoting *Formosa*, 960 S.W.2d at 48).

[116] *Formosa*, 960 S.W.2d at 48.

weight to be given their testimony."[117]  Since intent to defraud is generally not susceptible to direct proof, it usually must be shown by circumstantial evidence.[118]

"While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made."[119] A denial that a promise was made and a failure to perform, standing alone, do not suffice to show an intent to defraud.[120] Instead, Plaintiffs must provide some additional "slight circumstantial evidence" of fraud to support a finding of fraudulent intent.[121]

The Court finds that the Obstructed View Plaintiffs have shown slight circumstantial evidence from which a reasonable juror could find fraudulent intent based on recklessness. Young purchased her tickets in November 2010.[122]  A few months thereafter, e-mails between the seating contractor and the NFL acknowledged that seats in Young's section were "very poor" and "appear obstructed" because of the Pepsi sign.[123]  Through this and other evidence Young has met her slight burden of creating a fact question.[124]  That these were temporary seats may also indicate the NFL had early knowledge about the obstruction.

Both Fortune and Hoffman cite to January 9-10, 2011 e-mails between Todd Barnes, the NFL's event planning architect, and Fred Otto, the NFL's Director of Event Management.  The January 9-10 e-mails between Otto and Barnes identified sightline issues in the temporary seats in the "Curves" sections where Hoffman and Fortune sat.[125]  Also, both Otto and Barnes testified

---

[117] *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).
[118] *Id.*
[119] *Id.*
[120] *Ensley v. Cody Res., Inc.,* 171 F.3d 315, 322 (5th Cir. 1999) (citing *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex. 1992); *Spoljaric,* 708 S.W.2d at 435).
[121] *Id.* (citing *Spoljaric,* 708 S.W.2d at 435; *Hoechst Celanese Corp. v. Arthur Bros., Inc.,* 882 S.W.2d 917, 925 (Tex.App.1994)).
[122] Pls.'s Ex. 16 at App. 168 (Young Dep.).
[123] Pls.'s Ex. 36 at App. 486 (E-Mail Between Fred Otto, Todd Barnes, and Brett Daniels).
[124] Pls.'s Ex. 19 at App. 224–25 (Otto Dep.).
[125] Pls.'s Ex. 46 at App. 540–42 (E-Mail Between Fred Otto and Todd Barnes).

that there were sightline problems with the Curves sections leading up to the game.[126]  It may be that the proof will be that the NFL was unaware of these obstructions, or that it implemented a reasonable quality-control process to ensure that seats with obstructed views were marked as such, and discounted, but the summary judgment record does not establish those facts as a matter of law.  While the Court is skeptical that the Obstructed View Plaintiffs can ultimately prove fraudulent intent by the NFL at the time their tickets entered the stream of commerce, the January e-mails between the NFL and the seating contractor might evidence the NFL's recklessness in not determining the obstructions at the time of initial sale.[127]  The Court will be mindful at trial of whether the evidence admitted satisfies the fraudulent intent element.

For the foregoing reasons, the Court denies the NFL's Motion for Summary Judgment as to the Obstructed View Plaintiffs' fraudulent inducement claims.

## C.  The NFL's Mootness Argument

The NFL moves to dismiss the claims of the Displaced Plaintiffs, Delayed Plaintiff, and Relocated Plaintiffs as moot because the NFL made reimbursement offers in excess of what Plaintiffs could recover under the law.  In response, Plaintiffs argue that the NFL's reimbursement offers fell below what Plaintiffs can recover for breach of contract.  Moreover, Plaintiffs point out that the reimbursement offers have expired and were contingent on Plaintiffs releasing their claims against the NFL.

Article III of the United States Constitution permits a federal court to adjudicate only "cases" or "controversies."[128]  "Such a case or controversy must exist throughout the litigation;

---

[126] Pls.'s Ex. 30 at App. 431–32 (Barnes Dep.); Pls.'s Ex. 19 at App. 215 (Otto Dep.).
[127] Def.'s Ex. 2 at App. 46–47 (Otto Decl.) (explaining that some seats were marked "Restricted View" and 108 seats were not sold because of obstructed views).
[128] U.S. Const. Art. III, § 2; *see Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

in other words, the case cannot be moot."[129]  Thus, "[i]f a case has been rendered moot, a federal

court has no constitutional authority to resolve the issues that it presents."[130]  A case is moot

when "'there are no longer adverse parties with sufficient legal interests to maintain the

litigation' or 'when the parties lack a legally cognizable interest in the outcome' of the

litigation."[131]

      A settlement offer made pursuant to Rule 68 of the Federal Rules of Civil Procedure may

moot a claim, even if rejected, but the same does not necessarily apply to a settlement offer not

made under Rule 68, as was the case here. [132]  In other words, an offer of less than the full relief

requested does not moot a case, and a settlement offer that is not enforceable as a judgment is an

offer of less than the full relief requested.[133]  A judgment is preferable to a settlement agreement

because it is more easily enforced and establishes as a matter of record the validation of a

plaintiff's claim.[134]

      Although the NFL made settlement offers to the Displaced, Relocated, and Delayed

Plaintiffs, they were not made pursuant to Rule 68.[135]  Although it may turn out that the offers

were generous, that does not change the fact that they were not offers for a judgment and they

required ticketholders to release their claims against the NFL as a condition to resolution.  The

release required as a condition of the offer makes the offers less than the full recovery potentially

---

[129] *Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency,* 533 F.3d 258, 264 (5th Cir. 2008).

[130] *Envtl. Conservation Org. v. City of Dallas,* 529 F.3d 519, 525 (5th Cir. 2008).

[131] *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008) (citation omitted).

[132] *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008) (holding that an individual plaintiff's claim in an FLSA collective action was mooted when defendant made an offer of judgment).

[133] *See Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1166–68 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 2337, 185 L. Ed. 2d 1063 (2013) (holding that even a settlement offer above the maximum statutory damages did not moot plaintiff's claim because it was not enforceable as a judgment under Rule 68); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 764–67 (4th Cir. 2011) (holding that an offer to plaintiff of "full relief" did not moot plaintiff's claim because it was not made pursuant to Rule 68); *Gates v. Towery*, 430 F.3d 429, 431–32 (7th Cir. 2005) ("A defendant cannot simply assume that its legal position is sound and have the case dismissed because it has tendered everything it admits is due.").

[134] *Simmons*, 634 F.3d at 765; *Zinni*, 692 F.3d at 1167 (quoting *id.*).

[135] Dkt. No. 19-1 at 2-3 ("Plan for Reimbursement for Fans Displaced . . . ."); Dkt. No. 30 at 5 ("Plan for Reimbursement for Ticket Holders . . . Who Were Delayed").

available, and thus precludes a mootness finding.  Further, pursuant to Texas Civil Practice and

Remedies Code Section 38.001, a person who prevails on a breach of contract claim can recover

attorney's fees and costs assuming satisfaction of the statutory requirements.[136]  Plaintiffs

requested attorney's fees and costs in their Second Amended Complaint.[137]  Because the NFL's

reimbursement offers did not include attorney's fees, they were less than what Plaintiffs could

potentially recover.

 Because the reimbursement offers were for less than the full relief potentially available

in a judgment, the Relocated, Delayed, and Displaced Plaintiffs' claims are not moot.

Defendant's Motion to Dismiss Plaintiffs' claims on this basis is denied.

## IV. CONCLUSION

 In conclusion, the Court **DENIES** Defendant's Motion for Partial Summary Judgment

with respect to the Displaced Plaintiffs' and Relocated Plaintiffs' breach of contract claims.  The

Court **GRANTS** Defendant's Motion with respect to Constance Young's breach of contract

claim based on a delay in getting to her seats and on a claim that her view of the video board was

obstructed.  The Court also **GRANTS** Defendant's Motion with respect to Rebecca Burgwin's

breach of contract claim based on her and her husband's delay in the ticket-exchange process.

All other parts of the Motion for Partial Summary Judgment and to Dismiss are **DENIED**.

 **SO ORDERED.**

 September 30, 2014.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[136] Tex. Civ. Prac. & Rem. Code § 38.001.
[137] Dkt. No. 182 at 30.