## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| BRUCE IBE, CONSTANCE YOUNG, JASON MCLEAR, ROBERT FORTUNE, DEAN HOFFMAN, KEN LAFFIN, DAVID WANTA, and REBECCA BURGWIN, | § § § § § | |
| Plaintiffs, | § | |
| vs. | § | Civil Action No. 3:11-CV-00248-M |
| | § | |
| NATIONAL FOOTBALL LEAGUE, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT NATIONAL FOOTBALL LEAGUE'S
## PROPOSED CHARGE TO THE JURY

George Bramblett
R. Thaddeus Behrens
Daniel H. Gold
Scott Ewing
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000
(214) 651-5940 (Facsimile)

ATTORNEYS FOR DEFENDANT
NATIONAL FOOTBALL LEAGUE

Pursuant to the Court's December 29, 2014 Order, Defendant National Football League (NFL) submits this Proposed Charge to the Jury. Defendant requests that the Court propound the instructions and questions herein to the jury at the conclusion of the trial of this action.

Defendant reserves the right to supplement, amend, or withdraw any submission based on the evidence presented at trial, and to object to any submissions by Plaintiffs. Further, Defendant provides this Proposed Charge to the Jury based on the Court's interpretation of the Super Bowl XLV ticket contract and the law as stated in its prior rulings. The NFL expressly reserves all, and does not waive any, rights (including rights of appeal) in connection with the issues of law previously decided by the Court, including in connection with the NFL's motion for partial summary judgment (Doc. 273) and motions to dismiss (Doc. 53, Doc. 65, Doc. 72, and Doc. 80). The NFL submits this Proposed Charge to the Jury subject to those preserved arguments and its contention that Plaintiffs will be unable to present legally sufficient evidence that warrants submission of their claims to the jury.

FILED:          February 18, 2015

Respectfully submitted,

*/s/ R. Thaddeus Behrens*
George Bramblett
R. Thaddeus Behrens
Daniel H. Gold
Scott Ewing
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000
(214) 651-5940 (Facsimile)

**ATTORNEYS FOR DEFENDANT
NATIONAL FOOTBALL LEAGUE**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 18th day of February, 2015 on the individuals listed below:

R. Jack Ayres, Jr.
Christopher S. Ayres
LAW OFFICES OF R. JACK AYRES, JR., P.C.
4350 Beltway Dr.
Addison, TX 75001

Michael J Avenatti
Andrew Stolper
Ahmed Ibrahim
EAGAN AVENATTI , LLP
520 Newport Center Dr., Suite 1400
Newport Beach, CA 92660

By: */s/ R. Thaddeus Behrens*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| STEVE SIMMS, BRUCE IBE, WES LEWIS, | § | |
| CONSTANCE YOUNG, ROBERT FORTUNE, | § | |
| DEAN HOFFMAN, KEN LAFFIN, DAVID | § | |
| WANTA, and REBECCA BURGWIN, | § | |
| individually and on Behalf of All Others | § | |
| Similarly Situated, | § | |
| Plaintiffs, | § | |
| vs. | § | Civil Action No. 3:11-CV-00248-M |
| | § | |
| JERRAL "JERRY" WAYNE JONES, | § | |
| NATIONAL FOOTBALL LEAGUE, DALLAS | § | |
| COWBOYS FOOTBALL CLUB, LTD., JWJ | § | |
| CORPORATION, COWBOYS STADIUM, L.P., | § | |
| COWBOYS STADIUM GP, LLC, and BLUE & | § | |
| SILVER, INC., | § | |
| Defendants. | § | |

## DEFENDANT NATIONAL FOOTBALL LEAGUE'S
## PROPOSED CHARGE TO THE JURY

### PRELIMINARY INSTRUCTIONS

**Instructions for Beginning of Trial**

Members of the jury panel, if you have a cell phone, PDA, Blackberry, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything

1

they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

*Authority:* Fifth Circuit Pattern Jury Instr.-Civil § 1.1 (2014 ed.)

**Preliminary Instructions to the Jury**

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and

4

persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiffs will present their case through witness testimony and documentary or other evidence. Next, the defendant will have an opportunity to present its case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

It is now time for the opening statements.

*Authority:* Fifth Circuit Pattern Jury Instr.-Civil § 1.2 (2014 ed.).

**GENERAL INSTRUCTIONS**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be. After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony

that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

The Plaintiffs have the burden of proving their case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that any Plaintiff has failed to prove any element of his or her claims by a preponderance of the evidence, then that Plaintiff may not recover on that claim.

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered

in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently. In weighing the effect of a discrepancy,

always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or an intentional falsehood.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

*Authority*: Fifth Circuit Pattern Jury Instr.-Civil § 2.11, 3.1, 3.2, 3.3, 3.4 (2014 ed.); *Blottin v. Mary Kay, Inc.*, No. 3:10-CV-1905-M (N.D. Tex. 2012) (Lynn, J.); *Barnes v. Sanchez*, No. 3:07-CV-1184-M (N.D. Tex. 2011) (Lynn, J.); *Tapp v. Mead Johnson & Co.*, 3:06-CV-1580-M (N.D. Tex. 2008) (Lynn, J.).

**No Inference from Filing Suit**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

*Authority*: Fifth Circuit Pattern Jury Instr.-Civil § 3.6 (2014 ed.).

**Company Involved**

Do not let bias, prejudice or sympathy play any part in your deliberations. A company and all other persons are equal before the law and must be treated as equals in a court of justice.

*Authority*: Fifth Circuit Pattern Jury Instr.-Civil § 2.16 (2014 ed.); *Blottin v. Mary Kay, Inc.*, No. 3:10-CV-1905-M (N.D. Tex. 2012) (Lynn, J.).

## SPECIFIC INSTRUCTIONS

In answering the questions below, you are to follow all of the general instructions I have just given you, and the specific instructions that follow. You may return to any of the instructions as frequently as you need to do so to answer the questions below. Do not concern yourself with the fact that the questions are phrased so that they may appear similar or repetitive. Answer each question to which you are directed.

The plaintiffs in this lawsuit are: (1) Bruce Ibe, (2) Ken Laffin, (3) David Wanta, (4) Constance Young, (5) Rebecca Burgwin, (6) Jason McLear, (7) Robert Fortune, and (8) Dean Hoffman. The Defendant in this lawsuit is the National Football League (or "NFL").[1]

Each plaintiff has brought a claim for breach of contract, alleging that the NFL materially breached the parties' ticket contract in a specific respect:

- Plaintiff Ibe alleges that the NFL materially breached the ticket contract by not providing him and his daughter with spectator seats to the Super Bowl XLV game.[2]

- Plaintiff Laffin alleges that the NFL materially breached the ticket contract by not providing him with a spectator seat to the Super Bowl XLV game.[3]

- Plaintiff Wanta alleges that the NFL materially breached the ticket contract by not providing him with a spectator seat to the Super Bowl XLV game.[4]

- Plaintiff Burgwin alleges that the NFL materially breached the ticket contract by relocating her, her husband, and her daughters from their original seats to alternative seats, and by preventing her two daughters from gaining access to their replacement seats by the kick-off of the Super Bowl XLV game.[5]

- Plaintiff McLear alleges that the NFL materially breached the ticket contract by relocating him and his family from their original seats to alternative seats, and by preventing them from obtaining access to their replacement seats by the kick-off of the Super Bowl XLV game.[6]

---

[1] Doc. 335 (Final Pretrial Order) at 1.
[2] Doc. 335 at 1-2, 16, 17.
[3] Doc. 335 at 1-2, 16, 17.
[4] Doc. 335 at 1-2, 16, 17.
[5] Doc. 335 at 2, 16, 18-19.
[6] Doc. 335 at 2, 16, 18-19.

- Plaintiff Young alleges that the NFL materially breached the ticket contract by providing her and her husband seats with an obstructed view of the playing field for the Super Bowl XLV game.[7]

- Plaintiff Fortune alleges that the NFL materially breached the ticket contract by providing him and his wife seats with an obstructed view of the playing field for the Super Bowl XLV game.[8]

- Plaintiff Hoffman alleges that the NFL materially breached the ticket contract by providing him and his family seats with an obstructed view of the playing field for the Super Bowl XLV game.[9]

In addition, Plaintiffs Young, Fortune, and Hoffman have each brought a claim for fraudulent inducement to enter into a contract. Each alleges that the NFL fraudulently induced him or her into buying tickets to Super Bowl XLV by promising seats with an unobstructed view of the playing field without any intent of providing seats with unobstructed views of the field.[10]

The NFL contests liability on some of these claims, but not others. The NFL admits that it breached the Super Bowl XLV ticket contract (as interpreted by the Court) with respect to Mr. Ibe, Mr. Laffin, and Mr. Wanta because it was unable to provide them with spectator seats for the Super Bowl XLV game. The NFL also agrees that Mr. Ibe, Mr. Laffin, and Mr. Wanta are entitled to compensation for that breach of contract, but the parties disagree as to the amount of compensation to which Mr. Ibe, Mr. Laffin, and Mr. Wanta are entitled.[11]

The NFL also admits that it breached the Super Bowl XLV ticket contract (as interpreted by the Court) with respect to Ms. Burgwin and Mr. McLear by relocating them and their families to alternative seats. The NFL denies that any such breach was material and that it breached the

---

[7] Doc. 335 at 2-3, 16, 21-22.
[8] Doc. 335 at 2-3, 16, 21-22.
[9] Doc. 335 at 2-3, 16, 21-22.
[10] Doc. 335 at 2-3, 16.
[11] Doc. 335 at 7-9, 26, 32-33.

ticket contract with Ms. Burgwin and Mr. McLear in any other respect. The parties disagree as to the amount, if any, of compensation to which Ms. Burgwin and Mr. McLear are entitled.[12]

The NFL denies that it breached the Super Bowl XLV ticket contract with respect to Ms. Young, Mr. Fortune, and Mr. Hoffman. The NFL contends that these plaintiffs cannot prove that they had obstructed views of the playing field.[13] The NFL also denies that it fraudulently induced Ms. Young, Mr. Fortune, or Mr. Hoffman into buying their tickets through misrepresentations or omissions regarding the anticipated views of the playing field from their seats on the day of Super Bowl XLV.[14] The parties disagree as to the amount, if any, of compensation to which Ms. Young, Mr. Fortune, and Mr. Hoffman are entitled.[15]

---

[12] Doc. 335 at 9-10, 26-27, 33-34.
[13] Doc. 335 at 11-12, 27-28, 34-35 (Young); 12-13, 28-29, 35-36 (Fortune); 13-14, 30-31, 36-37 (Hoffman).
[14] Doc. 335 at 11-12, 27-28, 34-35 (Young); 12-13, 28-29, 35-36 (Fortune); 13-14, 30-31, 36-37 (Hoffman).
[15] Doc. 335 at 11-12, 27-28, 34-35 (Young); 12-13, 28-29, 35-36 (Fortune); 13-14, 30-31, 36-37 (Hoffman).

**Breach of Contract**

To prove a breach of contract claim, the plaintiff must prove, by a preponderance of the evidence, the following elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) a breach of the contract by the defendant; and (4) economic damages sustained by the plaintiff caused by the breach.[16]

A person may breach a contract by failing to perform a contractual obligation when that performance is called for, unless that performance is otherwise excused.[17]  In order to constitute a breach, a failure to perform a contractual obligation must be substantial rather than a minor or technical failure.[18] In making this determination, consider the following circumstances:

1. the extent to which the injured party will be deprived of the benefit which he or she reasonably expected;

2. the extent to which the injured party can be adequately compensated for the part of that benefit of which he or she will be deprived;

3. the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4. the likelihood that the party failing to perform or to offer to perform will cure its failure, taking into account the circumstances including any reasonable assurances;

---

[16] *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App.—Dallas 2008, no pet.); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 628 (N.D. Tex. 2010) (Lynn, J.)

[17] *Smith v. EMC Corp.*, No. 3:02-CV-862-M (N.D. Tex. June 30, 2002) (Lynn, J.).

[18] *Smith v. EMC Corp.*, No. 3:02-CV-862-M (N.D. Tex. June 30, 2002) (Lynn, J.); *Chistopher V. Perry Family, L.P. v. Whatever, L.L.C.*, No. H-08-1387, 2009 WL 3672834, at *2 (S.D. Tex. Nov. 3, 2009) (holding that "defendant did not breach the contract" as a matter of law where they performed on day 91 even though contract specified that performance should occur by day 90); *Burns v. Medassets, Inc.*, No. 3:11-cv-1368-N (N.D. Tex. Oct. 15, 2012) (Godbey, J.) ("Substantial compliance with the requirements of a contract is the legal equivalent of full compliance."); *Del Monte Corp. v. Martin*, 574 S.W.2d 597, 599 (Tex. Civ. App.—San Antonio 1978, no writ) (same).

5. the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[19]

To recover for breach of contract, a plaintiff must suffer economic damages.[20] Therefore, for you to find a breach of contract, you must find specific economic damages suffered by the plaintiff as a result of the breach.[21]

---

[19] Tex. Pattern Jury Charge (hereinafter "Tex. PJC") 101.1, 101.2, 101.22 (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 199 (Tex. 2004) (adopting Restatement (Second) of Contracts § 241 (1981)).)

[20] *See, e.g., Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) ("For breach of contract, [plaintiff] could recover economic damages and attorney's fees, but not mental anguish or exemplary damages."); *Weber v. Domel*, 48 S.W.3d 435, 437 (Tex. App.—Waco 2001, no pet.) ("[I]n Texas . . . [t]he only recoverable damages . . . were the economic damages resulting from the [defendant's] breach of the lease agreement."); *Rayburn v. Equitable Life Assurance Soc'y of U.S.*, 805 F. Supp. 1401, 1409 (S.D. Tex. 1992) ("Damages for mental anguish are not recoverable in an action for breach of contract . . . .").

[21] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) ("For breach of contract, [a party] could recover economic damages . . . but not mental anguish or exemplary damages."); *Ryan v. Superior Oil Co.*, 813 S.W.2d 594, 596 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ("A claim for breach of contract requires proof that . . . plaintiffs suffered damages caused by the defendant's alleged breach.").

17

**Fraudulent Inducement**

To prove a claim of fraudulent inducement, the plaintiff must prove, by a preponderance of the evidence, that: (1) the NFL falsely promised to provide the plaintiff seats with unobstructed views of the playing field with an intent, at the time of the original sale of the ticket, not to perform as promised;[22] (2) the NFL knew the representation was false when made, or made it recklessly without any knowledge of the truth and as a positive assertion; (3) the NFL intended to induce the plaintiff to act upon the representation; (4) the plaintiff actually and justifiably relied upon the representation by purchasing the Super Bowl XLV ticket; and (5) thereby suffered injury.[23]

The mere failure to perform a contract is not evidence of fraud. Rather, a plaintiff must prove, by a preponderance of the evidence, that the defendant made misrepresentations with the intent to deceive and with no intention of performing as represented.[24] If, at the time the promise

---

[22] *See* Doc. 325 at 23; Tex. PJC 105.3B; *Bohnsack v. Varco, LP*, 668 F.2d 262, 277-78 (5th Cir. 2012); *see also Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) ("A promise to do an act in the future is an actionable misrepresentation when made with the intent to deceive and with no intention of performing the act."); *Flourine on Call, Ltd. v. Flourogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004); *Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002) ("In the case of a promise of future performance, the plaintiff also has to prove that the promise was made with no intention of performing at the time it was made.") (citation and internal quotation marks omitted); *L&C Consultants, LLC v. Ash Petroleum, Inc.*, No. 3:07-cv-1904, 2009 WL 3110200, at *6 (N.D. Tex. Sept. 29, 2009) ("To show fraud based on promise of future performance, a plaintiff must also show that the person making the promise had no intention of performing at the time he made the promise."); *Reyna v. First Nat'l Bank in Edinburg*, 55 S.W.3d 58, 68 (Tex. App.—Corpus Christi 2001, no pet.) ("Because the representation in this case involves a promise to do an act in the future, Reyna also had to prove that, at the time FNB made the promise to pay the invoices, it had no intention of performing the act."); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) ("A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act.").
[23] Tex. PJC 105.2; *Formosa Plastics Corp. v. Presidio Eng'gs & Contractors*, 960 S.W.2d 41, 46 (Tex. 1998); *Business Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 237-38 (Tex. App.–El Paso 2012, pet. denied); *Burns v. Medassets, Inc.*, No. 3:11-cv-1368-M (N.D. Tex. Oct. 15, 2012) (Godbey, J.).
[24] Doc. 325 at 21-22 (citing *Coffel v. Stryker Corp.*, 284 F.3d 625, 633-34 (5th Cir. 2002)); Doc. 89 at 7 ("To state a claim for fraudulent inducement, Plaintiffs must allege . . . that Defendants intended to induce Plaintiffs to purchase tickets based upon [fraudulent] representations."); Tex. PJC 105.3B.

was made, the defendant had any intention of performing, a promise of future performance cannot constitute a misrepresentation.[25]

Evidence of the NFL's efforts to perform, and partial performance, are relevant to whether the NFL intended to perform.[26]

---

[25] Doc. 325 at 21-22; *Formosa*, 960 S.W.2d at 48.

[26] *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124, 130-31 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (evidence of efforts to perform may negate fraudulent intent); *In re Perry*, 423 B.R. 215, 284 (Bankr. S.D. Tex. 2010) ("In Texas, partial performance of an agreement refutes an assertion that there was no intent to perform . . .").

**Compensatory Damages**

If a plaintiff has proven his or her claim against the NFL by a preponderance of the evidence, you must determine the damages to which he or she is entitled. You should not interpret the fact that I have given instructions about damages as an indication in any way that I believe that the plaintiff should, or should not, win this case. It is your task first to decide whether the NFL is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the NFL is liable and that the plaintiff is entitled to recover money from the NFL.[27]

You must determine an amount that is fair compensation for all of each plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole—that is, to compensate the plaintiff for the damage that the plaintiff has suffered.[28]

You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the NFL's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered.[29]

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the

---

[27] Fifth Circuit Pattern Jury Instr.-Civil § 15.1 (2014 ed.); *Barnes v. Sanchez*, No. 3:07-CV-1184-M (N.D. Tex. 2011) (Lynn, J.); *Tapp v. Mead Johnson & Co.*, 3:06-CV-1580-M (N.D. Tex. 2008) (Lynn, J.).
[28] Fifth Circuit Pattern Jury Instr.-Civil § 15.2 (2014 ed.).
[29] Fifth Circuit Pattern Jury Instr.-Civil § 15.2 (2014 ed.).

plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.[30]

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.[31] You may award plaintiff economic damages, meaning compensatory damages intended to compensate a plaintiff for actual economic or pecuniary loss; the term does not include exemplary damages or noneconomic damages such as mental anguish.[32]

You should consider the following element of damage, if any, and none other:

 [Insert proper measure of damages supported by the evidence]

---

[30] Fifth Circuit Pattern Jury Instr.-Civil § 15.2 (2014 ed.).
[31] Fifth Circuit Pattern Jury Instr.-Civil § 15.2 (2014 ed.).
[32] Tex. Civ. Prac. & Rem. Code § 41.001(4), (12); *see* Stipulation Regarding Certain Motions in Limine, Dkt. 342.

## Mitigation of Damages[33]

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate his damages, that is, to avoid or minimize those damages.

The NFL contends that each plaintiff, except for Rebecca Burgwin, failed to mitigate his or her damages after learning about the issues or alleged issues with his or her seats.

If you find a plaintiff has suffered damages, he may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The NFL has the burden of proving the damages which plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied its burden of proving that the plaintiff's conduct was not reasonable.

---

[33] Fifth Circuit Pattern Jury Instr.-Civil § 15.5 (2014 ed.).

**<u>Question #1</u>**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Bruce Ibe for his economic damages, if any, that resulted from the NFL's failure to provide Mr. Ibe and his daughter with spectator seats to the Super Bowl XLV game?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find Ibe could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:          $ _____

**Question #2**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate David Wanta for his economic damages, if any, that resulted from the NFL's failure to provide Mr. Wanta with a spectator seat to the Super Bowl XLV game?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find Wanta could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:                 $ _____

**Question #3**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Ken Laffin for his economic damages, if any, that resulted from the NFL's failure to provide Mr. Laffin with a spectator seat to the Super Bowl XLV game?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find Laffin could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:          $ _____

**Question #4**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Rebecca Burgwin for her, her husband, and her two daughters being relocated to alternative seats?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Answer in dollars and cents for damages, if any:          $ _____

**Question #5**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Jason McLear for him and his family being relocated to alternative seats?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find McLear could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:          $ _____

**Question #6**

The Super Bowl XLV ticket contract required the NFL to provide Constance Young and her husband with spectator seats to the Super Bowl XLV game that had unobstructed views of the playing field.

Do you find, by a preponderance of the evidence, that the NFL breached the ticket contract by providing Constance Young and her husband spectator seats to the Super Bowl XLV game with obstructed views of the playing field?

Answer "Yes" or "No."

Answer:      _____

28

*If you answered "yes" to Question 6, then answer the following question. Otherwise do not answer the following question.*

## Question #7

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Constance Young for her economic damages, if any, that resulted from the failure to provide seats with unobstructed views of the playing field that you found in your answer to Question #6?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find Young could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:          $ _____

*If you answered "yes" to Question 6, then answer the following question. Otherwise do not answer the following question.*

## Question #8

Fraud occurred if:

    a.   the NFL falsely promised to provide the plaintiff seats with unobstructed views of the playing field with an intent, at the time of the original sale of the ticket, not to perform as promised;

    b.   the NFL knew the representation was false when made, or made it recklessly without any knowledge of the truth and as a positive assertion;

    c.   the NFL intended to induce the plaintiff to act upon the representation;

    d.   the plaintiff actually and justifiably relied upon the representation by purchasing the Super Bowl XLV ticket; and

    e.   thereby suffered injury.

Did the NFL commit fraud against Young?

Answer "Yes" or "No."

Answer: _____

*If you answered "yes" to Question 8, then answer the following question.  Otherwise do not answer the following question.*

## Question #9

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Constance Young for her economic damages, if any, that resulted from the fraud, if any, that you found in your answer to Question #8?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find Young could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:          $ _____

31

*If you answered "yes" to Question 8, then answer the following question.   Otherwise do not answer the following question.*

## Question #10

Do you find by clear and convincing evidence that the harm to Constance Young that you found in Question #8 resulted from the NFL's fraud?

"Clear and convincing" evidence means the measure or degree of proof that will produce in your mind a firm belief or conviction as to the truth of the allegations sought to be established.[34]

Answer "Yes" or "No."

Answer: _____

---

[34] Tex. PJC 115.37B; Tex. Civ. Prac. & Rem. Code § 41.003(b).

**Question #11**

The Super Bowl XLV ticket contract required the NFL to provide Robert Fortune and his wife with spectator seats to the Super Bowl XLV game that had unobstructed views of the playing field.

Do you find, by a preponderance of the evidence, that the NFL breached the ticket contract by providing Robert Fortune and his wife spectator seats to the Super Bowl XLV game with obstructed views of the playing field?

Answer "Yes" or "No."

Answer: _____

*If you answered "yes" to Question 11, then answer the following question.  Otherwise do not answer the following question.*

**Question #12**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Robert Fortune for his economic damages, if any, that resulted from the failure to provide seats with unobstructed views of the playing field that you found in your answer to Question #11?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find Fortune could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:          $ _____

*If you answered "yes" to Question 11, then answer the following question.  Otherwise do not answer the following question.*

## Question #13

Fraud occurred if:

a.  the NFL falsely promised to provide the plaintiff seats with unobstructed views of the playing field with an intent, at the time of the original sale of the ticket, not to perform as promised;

b.  the NFL knew the representation was false when made, or made it recklessly without any knowledge of the truth and as a positive assertion;

c.  the NFL intended to induce the plaintiff to act upon the representation;

d.  the plaintiff actually and justifiably relied upon the representation by purchasing the Super Bowl XLV ticket; and

e.  thereby suffered injury.

Did the NFL commit fraud against Fortune?

Answer "Yes" or "No."

Answer: _____

*If you answered "yes" to Question 13, then answer the following question.  Otherwise do not answer the following question.*

## Question #14

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Robert Fortune for his economic damages, if any, that resulted from the fraud, if any, that you found in your answer to Question #13?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find Fortune could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:        $ _____

*If you answered "yes" to Question 13, then answer the following question.  Otherwise do not answer the following question.*

## Question #15

Do you find by clear and convincing evidence that the harm to Robert Fortune that you found in Question #13 resulted from the NFL's fraud?

"Clear and convincing" evidence means the measure or degree of proof that will produce in your mind a firm belief or conviction as to the truth of the allegations sought to be established.

Answer "Yes" or "No."

Answer:      _____

**Question #16**

The Super Bowl XLV ticket contract required the NFL to provide Dean Hoffman and his family with spectator seats to the Super Bowl XLV game that had unobstructed views of the playing field.

Do you find, by a preponderance of the evidence, that the NFL breached the ticket contract by providing Dean Hoffman and his family spectator seats to Super Bowl XLV with obstructed views of the playing field?

Answer "Yes" or "No."

Answer: _____

*If you answered "yes" to Question 16, then answer the following question. Otherwise do not answer the following question.*

**Question #17**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dean Hoffman for his economic damages, if any, that resulted from the failure to provide seats with unobstructed views of the playing field that you found in your answer to Question #16?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find Hoffman could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:          $ _____

*If you answered "yes" to Question 16, then answer the following question.  Otherwise do not answer the following question.*

## Question #18

Fraud occurred if:

a. the NFL falsely promised to provide the plaintiff seats with unobstructed views of the playing field with an intent, at the time of the original sale of the ticket, not to perform as promised;

b. the NFL knew the representation was false when made, or made it recklessly without any knowledge of the truth and as a positive assertion;

c. the NFL intended to induce the plaintiff to act upon the representation;

d. the plaintiff actually and justifiably relied upon the representation by purchasing the Super Bowl XLV ticket; and

e. thereby suffered injury.

Did the NFL commit fraud against Hoffman?

Answer "Yes" or "No."

Answer:  _____

*If you answered "yes" to Question 18, then answer the following question.  Otherwise do not answer the following question.*

**Question #19**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dean Hoffman for his economic damages, if any, that resulted from the fraud, if any, that you found in your answer to Question #18?

Consider the following element of damage, if any, and none other:

[Insert proper measure of damages supported by the evidence]

Do not include in your answer any amount that you find Hoffman could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:        $ _____

*If you answered "yes" to Question 18, then answer the following question.  Otherwise do not answer the following question.*

## Question #20

Do you find by clear and convincing evidence that the harm to Dean Hoffman that you found in Question #18 resulted from the NFL's fraud?

"Clear and convincing" evidence means the measure or degree of proof that will produce in your mind a firm belief or conviction as to the truth of the allegations sought to be established.

Answer "Yes" or "No."

Answer:        _____

*This completes the Questions. The Jury Foreperson should sign and date the verdict and return the Charge to the Court.*

42

**INSTRUCTIONS AND QUESTIONS TO BE SUBMITTED IN BIFURCATED CHARGE ON EXEMPLARY DAMAGES**[35]

**Exemplary Damages**

If you find that the NFL is liable to plaintiffs Young, Fortune, or Hoffman for fraudulent inducement, you must award that plaintiff the compensatory damages that he or she has proven. You also may award exemplary damages to the plaintiff if you find that he or she was fraudulently induced, but you are not required to do so.[36] "Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.[37]

The law does not require you to award exemplary damages; if you decide to award exemplary damages, you must use sound reason in setting the amount of the damages. The amount of an award of exemplary damages must not reflect bias, prejudice, or sympathy toward any party. It should be presumed a plaintiff has been made whole by compensatory damages, so exemplary damages should be awarded only if the defendant's misconduct, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.[38]

Exemplary damages may be awarded only if the plaintiff proves by clear and convincing evidence that the harm with respect to which the plaintiff seeks recovery of exemplary damages resulted from the defendant's fraud, as defined on pages 18-19. This burden of proof may not be shifted to the defendant or satisfied by evidence of bad faith.[39]

---

[35] In the event the Court submits exemplary damages to the jury, the parties have agreed that exemplary damages should be submitted in a bifurcated charge. *See* Joint Pretrial Order, Doc. 335 at 40, 41.
[36] Fifth Circuit Pattern Jury Instr.-Civil § 15.7 (2014 ed.).
[37] Tex. PJC 115.38; *Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768, 772 (5th Cir. 2010).
[38] Fifth Circuit Pattern Jury Instr.-Civil § 15.7 (2014 ed.).
[39] Tex. Civ. Prac. & Rem. Code § 41.003(b).

"Clear and convincing" evidence means the measure or degree of proof that will produce in your mind a firm belief or conviction as to the truth of the allegations sought to be established.[40]

Factors to consider in awarding exemplary damages, if any, are—

1. The nature of the wrong.

2. The character of the conduct involved.

3. The degree of culpability of the defendant.

4. The situation and sensibilities of the parties concerned.

5. The extent to which such conduct offends a public sense of justice and propriety.

6. The net worth of the defendant.[41]

**Question #1**

What sum of money, if any, if paid now in cash, should be assessed against the NFL and awarded to Constance Young as exemplary damages, if any, for the conduct found in response to Question #8?

Answer in dollars and cents for damages, if any:          $_____

**Question #2**

What sum of money, if any, if paid now in cash, should be assessed against the NFL and awarded to Robert Fortune as exemplary damages, if any, for the conduct found in response to Question #13?

Answer in dollars and cents for damages, if any:          $_____

---

[40] Tex. PJC 115.37B; Tex. Civ. Prac. & Rem. Code § 41.003(b).
[41] Tex. PJC 115.38.

**<u>Question #3</u>**

What sum of money, if any, if paid now in cash, should be assessed against the NFL and awarded to Dean Hoffman as exemplary damages, if any, for the conduct found in response to Question #18?

Answer in dollars and cents for damages, if any:          $_____

# FINAL INSTRUCTIONS

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a Foreperson to guide you in your deliberations and to speak for you here in the courtroom.

[I want to advise you that although our court reporter has taken down all of the testimony, it is not done in such a way that we can read back or furnish testimony to you at your request. Only when you have a specific disagreement as to a particular witness's testimony on a specific subject can we attempt to obtain that information for you.]

Your verdict must be unanimous. After you have reached a unanimous verdict, your Foreperson must fill out the answers to the written questions on the verdict form and sign and

date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the Foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. I will always first disclose to the attorneys your question and my response before I answer your question. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to conduct your deliberations.

*Authority*: Fifth Circuit Pattern Jury Instr.-Civil § 3.7 (2014 ed.); *Blottin v. Mary Kay, Inc.*, No. 3:10-CV-1905-M (N.D. Tex. 2012) (Lynn, J.); *Barnes v. Sanchez*, No. 3:07-CV-1184-M (N.D. Tex. 2011) (Lynn, J.); *Tapp v. Mead Johnson & Co.*, 3:06-CV-1580-M (N.D. Tex. 2008) (Lynn, J.).

**DATED:  _____**

                                          _____
                                          **BARBARA M.G. LYNN**
                                          **UNITED STATES DISTRICT JUDGE**
                                          **NORTHERN DISTRICT OF TEXAS**

## <u>VERDICT OF THE JURY</u>

We, the jury, have answered the above and foregoing questions as indicated, and herewith return the same into Court as our verdict.

**DATED: _____**

_____
FOREPERSON