UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRUCE IBE, et al., | § | |
| | § | |
| | § | Civil Action No. 3:11-CV-00248-M |
| | § | |
| Plaintiffs, | § | |
| v. | § | (Consolidated with 3:11-CV-345-M) |
| | § | |
| NATIONAL FOOTBALL LEAGUE | § | |
| Defendant. | § | |

**NON-PARTY JERRAL "JERRY" WAYNE JONES' FIRST SUPPLEMENTAL
MOTION TO QUASH AND FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT
[RELATED TO DOCKET NOS. 406 & 407]**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Non-Party Jerral "Jerry" Wayne Jones ("Jones") and files this his First
Supplemental Motion to Quash and for Protective Order and Brief in Support (the "Motion"),
and respectfully asks that this Court quash Plaintiffs' trial/production subpoena and grant him a
protective order against same pursuant to Federal Rules of Civil Procedure 45(b) and 26(b)(2) &
(c) and 37(a)(5).

## I.    INTRODUCTION

In addition to the Court's consideration of the *Apex* rule, the timeliness of Plaintiffs'
request for testimony, and the other arguments made by Mr. Jones in his previously filed Motion
to Quash and for Protection, Jerry Jones respectfully requests that the Court consider the findings
of the Honorable Magistrate Judge Toliver in the *Greco* matter, a sister suit involving identical
allegations, identical claims, and identical attorneys, where Judge Toliver found that "Jones does
not possess unique first-hand knowledge of underlying information about the events giving rise to
Plaintiffs' remaining claims."  Plaintiffs apparently feel entitled to Jones' testimony, in light of

prior trial testimony provided in this matter. However, nothing has changed.  The trial testimony provided to date is more of the same.  Plaintiffs rely on the same facts and the same arguments that prompted Judge Toliver to grant Jones protection in the *Greco* matter.  Jones respectfully requests that the Court find similarly here.

Further, and as detailed more fully below, the only testimony that could be elicited from Mr. Jones is not relevant to any remaining causes of action or issues in dispute in this matter.  As such, and in addition to the arguments raised in Mr. Jones' original Motion to Quash and for Protective Order, which include the untimely, unduly burdensome, eleventh-hour request for testimony, Mr. Jones respectfully requests that the Court grant his Motion, as any testimony provided would be irrelevant, cumulative and/or both.

## II.     ARGUMENT

The only claims remaining in this matter are (1) a claim by all Plaintiffs against Defendant National Football League ("Defendant" or "NFL") for breach of contract, and (2) a claim by Plaintiffs Robert Fortune and Dean Hoffman against the NFL for fraudulent inducement.  *See* Plaintiffs' Consolidated Second Amended Complaint [Docket No. 182].

### A.  Jones' Testimony Not Relevant to Breach of Contract Claims

Under Texas law, the essential elements of breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.[1] Jones possesses no unique personal knowledge that is relevant to any of the elements of Plaintiffs' cause of action for breach of contract against the NFL.  In *Greco*, Judge Toliver

---

[1]      *See Orange Solutions Inc. v. Net Direct Systems LLC,* 2011 WL 2489413, *3 (N.D. Texas 2011) (citing *Valero Marketing & Supply Co. v. Kalama Int'l,* 51 S.W.3d 345, 351 (Tex.App.—Houston [1st Dist.] 2001, no pet.) and *Smith Int'l, Inc. v. Egle Group, LLC,* 490 F.3d 380, 387 (5th Cir. 2007)).

entered an Order on February 4, 2015 (the "Prior Order"), in which she noted that the *Greco* "action arises from the same facts alleged in an earlier-filed parallel action, *Simms v. Jones,* 11-CV-248-M-BK, in which the plaintiffs are represented by the same counsel who represent the Plaintiffs in this case."[2]   The Court further noted that the *Greco* plaintiffs "asserted the same claims and pled allegations nearly identical to those pleaded by the plaintiffs in *Simms[3].*   With the same claims, and with nearly identical pled allegations, Judge Toliver found in *Greco* that "Jones does not possess unique first-hand knowledge of <u>relevant</u> information about the events giving rise to Plaintiffs' remaining claims."[4]   Because the Court found that Jones possessed no unique first-hand knowledge of relevant information about the *Greco* plaintiffs' claims, and because the instant Plaintiffs assert the same claims and nearly identical allegations as the *Greco* plaintiffs, Jones should in all things be protected from testifying in the instant case.   Irrelevant evidence is not admissible at trial.[5]   As such, Jones should not be ordered to testify.

Even if Jones provided relevant testimony to this matter regarding Plaintiffs' breach of contract claim, such testimony would be cumulative, as the parties do not dispute the underlying facts on that claim.  Again, Plaintiffs' breach of contract claim is premised on allegations that (1) the "NFL breached its obligations…by, among other things, failing and refusing to provide any seats to these ticket holders," (2) the "NFL breached its obligations, by among other things, failing to provide the assigned seat purchased by the ticket holder and/or delaying ticket holders in gaining pre-game access to their seats…", and (3) the "NFL breached its obligations…by,

---

[2]      *See* Order, entered by the Honorable Magistrate Judge Toliver, dated February 4, 2015, attached as Exhibit "A" to Non-Party Jerral "Jerry" Wayne Jones' Appendix in Support of Motion to Quash and for Protective Order and Brief in Support (the "Appendix") [Docket No. 407] at pg. 4.
[3]      *See* Exhibit "A" to the Appendix [Docket No. 407].
[4]      *See id.* at pg. 8 (emphasis original).
[5]      *See* Fed. R. Evid. 402.

among other things, providing temporary and obstructed view seating without proper disclosure."[6]  The NFL does not dispute that the Plaintiffs were displaced and/or relocated.  In fact, the NFL takes full responsibility for these facts.  In the NFL's opening statement, Defendant's counsel, Thaddeus Behrens, stated as follows:

> **But frankly, the reasons why the seats were not**
> **there doesn't matter. The NFL has never looked for excuses,**
> **and we're not here to blame anyone else.**
> **This was an NFL event, and it was the NFL's**
> **obligation to provide seats for these fans as promised. The**
> **NFL accepted full responsibility on the day of the game for**
> **this failure, and in court, the NFL will again accept full**
> **responsibility. Let me say that again. For people that**
> **didn't receive seats, for the people who had to get**
> **alternative seats, the NFL accepts full responsibility.**

See Transcript of Jury Trial, Volume 1, Monday, March 2, 2015 at 209:13-22.

This point was further bolstered by the testimony of Frank Supovitz, the Senior Vice President of Events for the NFL, who testified at trial that the NFL was ultimately responsible for any alleged breach, as follows:

> Q Mr. Supovitz, earlier I asked, why was it that the seats
> did not get finished and approved for use in time. Why was
> that?
> **A They were not considered safe by the buildings**
> **department, and that's not something that I would ever argue**
> **with. Safety first. And if they weren't safe, they weren't**
> **to be used.**
> Q And they were delayed in being installed, right?
> **A They were delayed in being fully installed, yes.**
> Q And who -- why did the -- whose fault is the delay?
> **A Well, ultimately the contractor didn't finish the job.**
> **If you're asking who's responsible overall, that would be my**
>
> **responsibility. The National Football League is responsible,**
> **was responsible, and I was responsible, ultimately. It was**
> **our event.**

---

[6]     See Plaintiffs' Consolidated Second Amended Complaint [Docket No. 182] at pg. 27.

*See* Transcript of Jury Trial, Volume I, Tuesday, March 3, 2015 at 151:14-152:3.

The facts that underlie the breach of contract theory are not even in dispute.  Mr. Behrens

enunciated this point further in his opening, as follows:

> **As I said,**
> **the NFL let them down. The NFL takes full responsibility, and**
> **the NFL agrees they should be compensated by you.**
> **The only disagreement that the NFL has with**
> **Mr. Laffin and Mr. Ibe and Mr. Wanta is the amount of**
>
> **compensation that is reasonable and to which they are**
> **entitled.**

*See* Transcript of Jury Trial, Volume 1, Monday, March 2, 2015 at 210:21-211:2.

As such, any testimony provided by Jones as to a breach of contract claim would either

be irrelevant and/or cumulative, as those facts have already been established.  Because Plaintiffs

cannot show that Jones' testimony is relevant to the cause of action, and because the Court has

already ruled previously that Jones does not possess any "unique first-hand knowledge of

relevant information about the events giving rise [to Plaintiffs' breach of contract claim]," Jones'

trial subpoena should be quashed and the Court should enter a protective order, accordingly.

**B.  Jones' Testimony Not Relevant to Fraudulent Inducement Claims**

In order for Plaintiffs Robert Fortune and Dean Hoffman to prove that the NFL is liable

for fraudulent inducement, Plaintiffs must show: (1) a material misrepresentation was made; (2)

when the misrepresentation was made, the speaker knew it was false or made it recklessly

without any knowledge of the truth and as a positive assertion; (3) the speaker made the

misrepresentation with the intent that the other party should act on it; (4) the plaintiff detrimentally relied on the misrepresentation.[7]

Plaintiffs' fraudulent inducement claim is premised on the allegation that "the NFL affirmatively represented that the views of the game…from the assigned seats purchased by ticket holders would not be obstructed."[8]  Again, Jones, a non-party, does not possess any unique personal knowledge that is relevant to any of the elements of Plaintiffs' cause of action for fraudulent inducement against the NFL.   The Court in *Greco* already found the same, under identical claims, and with nearly identical pled allegations.[9]

Not a single witness in this trial testified that Jones had any involvement, whatsoever, with selling obstructed view seats to the public.  Again, Jones is not a party to this matter.  The question is not what knowledge Jones possessed, but instead, what "material misrepresentations" (if any) were made by the NFL, and whether the NFL (not Jones) "knew [the material misrepresentation (if any)] was false or made…recklessly without any knowledge of the truth and as a positive assertion."

The only trial testimony related (in any way) to Jones and obstructed view seats was provided by Frank Supovitz, who testified, in reference to an email, Exhibit No. 60, as follows:

> Q And you responded with: "How many can we put them in
> the Cowboys allocation if they are, quote, okay in their
> opinion?"
> That's what you wrote, correct?
> **A Yes, sir.**
> Q And you were being facetious, right?
> **A No, I don't believe I was being facetious.**
> Q You were serious.

---

[7]       *See Lewis v. Bank of America NA,* 343 F.3d 540, 544 (5th Cir. 2003) (citing *In re FirstMerit Bank, N.A.,*52 S.W.3d 749, 758 (Tex. 2001)).

[8]       *See* Plaintiffs' Consolidated Second Amended Complaint [Docket No. 182] at pg. 28.

[9]       *See* Order, attached as Exhibit "A" to the Appendix [Docket No. 407].

**A Yes. We didn't know -- I didn't know how obstructed they would be. And if they thought that they were unobstructed, then we could potentially put them in their allocation of tickets.**

Q And Mr. Otto responded to you: "Well, they only get 3,000 tix -- doubt if Jerry would be very happy if a thousand of them were obstructed," correct?

**A That was Fred's opinion. As it turns out, there were more than a thousand.**

Q My question is: What did you understand Mr. Otto to mean when he stated, "Well, they only get 3,000 tickets -- doubt if Jerry would be very happy if a thousand of them were obstructed"?

**A As the host team, they only got 3,000 tickets, maybe a little bit more, from the Super Bowl allocation. And what he was -- what he was projecting was that Jerry Jones would not**

**be happy if a thousand of them were the obstructed views in the silver level.**

Q You understood that he was being facetious, correct?

**A I think he was anticipating; not being facetious, necessarily.**

*See* Transcript of Jury Trial, Volume I, Tuesday, March 3, 2015 at 228:2-229:5.

The entirety of trial testimony in this matter to date regarding Jones and obstructive seat viewing is the "opinion," the "anticipation," and/or the conjecture of others that Jones would not be "very happy" if 1,000 of his allotted 3,000 tickets were obstructed view seats. This passage of testimony is the sum total of all testimony regarding obstructed view seats that in any way relates to Jones.[10]

While the above-referenced testimony may shed light on what NFL personnel knew about obstructed view seating at the Super Bowl, no evidence has been proffered to show any communications directly with Jones about obstructed view seating and/or the sale of the same to the public. Further, the testimony does not establish any knowledge Jones may have had

---

[10]   The Court will further note that the obstructed view seats referenced in Exhibit 60 and allocated to the Dallas Cowboys were actually marked "Restricted View," which again, has nothing to do with the obstructed view seats claim brought by the Plaintiffs.

regarding the NFL's knowledge of the obstructed view seats, let alone evidence communications by Jones to the NFL providing direction regarding alleged obstructed view seats.  No testimony would suggest any additional knowledge Jones may have given the NFL regarding the potential scenario for obstructed view seating.  It is the NFL's knowledge, and not Jones' knowledge, that is in question in this trial.    Because of the aforementioned, and because the Court has already ruled previously that Jones does not possess any "unique first-hand knowledge of <u>relevant</u> information about the events giving rise [to Plaintiffs' fraudulent inducement claim]," Jones' trial subpoena should be quashed and the Court should enter a protective order, accordingly.

**C.  Trial Testimony Supports Jones' Motion.**

The trial testimony provided through the first two (2) days of trial further supports Jones' Motion and contention that his trial testimony would be irrelevant to the proceedings.  The first day testimony referencing Jones centered on Jones' alleged desire to break the attendance record at the Super Bowl in 2011.  Frank Supovitz testified by video deposition as follows:

> "QUESTION: Did Jerry Jones want to break the attendance
> record?
> **"ANSWER: You would have to ask him.**
> "QUESTION: You don't know?
> **"ANSWER: I know what I have read.**
> "QUESTION: You never formed an opinion, sir, as to
> whether Jerry Jones wanted to break the attendance record for
> a Super Bowl prior to Super Bowl XLV? Is that your testimony
> under oath here today?
> **"ANSWER: He did mention to me that he was interested in
> breaking the attendance record.**
>
> "QUESTION: Well, why is it, then, that you just said you
> knew what you read? It's not just what you read, it's what
> you heard from the man himself, is that --
> **"ANSWER: Yes**
>
> "QUESTION: -- is that right?
> **"ANSWER: You are correct.**

"QUESTION: Okay. What did he tell you?
**"ANSWER: In one conversation, at least one conversation, he mentioned to me that he'd like to break the attendance record at Super Bowl XLV.**

See Transcript of Jury Trial, Volume 1, Monday, March 2, 2015 at 241:11-242:6.

"QUESTION: Sure. Did you ever come to be concerned that Jerry Jones or the Cowboys were more interested in the quantity of seats that could be sold for Super Bowl XLV as opposed to the quality of those seats?
**"ANSWER: I can't characterize myself as concerned, but I do know that they were very focused on maximizing the number of people in the building.**

See Transcript of Jury Trial, Volume 1, Monday, March 2, 2015 at 242:14-20.

"QUESTION: Do you recall being on any telephone call with Jerry Jones during which breaking the attendance record was discussed?
**"ANSWER: I remember having a conversation -- having conversations with Jerry Jones on the telephone regarding the attendance record, yes.**

See Transcript of Jury Trial, Volume 1, Monday, March 2, 2015 at 264:13-18.

However, Jones' desire to break an attendance record is not on trial. Further, Frank Supovitz testified that Jones' desires/wishes/motivations were entirely irrelevant as the NFL was the ultimate decision maker on any matter involving the disputed seats.

Q Who is Mr. Jones?
**A Mr. Jones is the owner of the Dallas Cowboys.**
Q And did Mr. Jones ever have a discussion with you about the attendance for Super Bowl XLV?
**A Yes, sir, he did.**
Q Did he ever make known to you that he would like to break the attendance record?
**A Yes, he did.**
Q Did Mr. Jones have the ability to control the attendance record, whether he broke it or not?
**A No, sir, he did not.**
Q Whose call was it how many seats would ultimately be installed?
**A That was my call.**

*See* Transcript of Jury Trial, Volume 1, Tuesday, March 3, 2015 at 117:1-14.

Supovitz testified that Jones maintained no <u>control</u> over the temporary seating to be installed—that decision fell on his shoulders, as Senior Vice President of Events for the NFL. Any testimony about Jones' motivations, desires or wishes for increased seating capacity are wholly irrelevant to the issues at trial.

In fact, Supovitz testified that he never even had a discussion with Jones about the temporary seats in connection with the attendance record.

> Q Did you ever have a discussion with Mr. Jones ever where temporary seats was discussed in connection with the attendance record?
> **A No, sir.**

*See* Transcript of Jury Trial, Volume 1, Tuesday, March 3, 2015 at 118:3-6.

In fact, Supovitz testified that his discussions with Jones regarding increasing the seating were related to putting additional attendees in the club or on stairwells—not in temporary seats.

> Q And why were you sending this to Mr. Grubman back in November?
> **A I believe what I'm referring to here is Jerry Jones had asked us to consider the possibility of selling tickets to put people in the club that would not have seats. But it's essentially the same club that the 400 people that were unfortunate and did not have seats ended up in.**
> **Jerry Jones had suggested the possibility of selling tickets for people to watch the game on television in the clubs and then count that toward the capacity. And I had pushed back on that.**
> Q But you suggested, "I may be able to get a thousand on the stairwells." Is that right?
> **A That's correct, the stairwells that were designated to**
>
> **have standing room only on them.**
> Q So you were going to have people standing on the stairwells?
> **A In fact, we did, and the Cowboys do pretty much every game. Those stairwells are built to hold a standing room**

**audience.**

*See* Transcript of Jury Trial, Volume 1, Tuesday, March 3, 2015 at 263:12-264:6.

Based on Supovitz' testimony, not only did Jones not discuss temporary seating with him, but Supovitz "pushed back" on other alternative ideas given by Jones because Supovitz and the NFL made the final call.

When asked why he would inform Jones about attendance information if Jones had "no control" over such information, Supovitz responded as follows:

> Q Well, if Mr. Jones didn't have any control over
> attendance and he had no control over whether the Super Bowl
>
> attendance record was going to be broken, why did you share it
> with him?
> **A Because it was something that he was interested in, and**
> **I would share that information with any owner.**

*See* Transcript of Jury Trial, Volume 1, Tuesday, March 3, 2015 at 220:24-221:4.

The NFL disseminated information to Jones, as it would to any other team owner. Such testimony does not rise to the level of necessitating Jones' testimony in this matter.

Plaintiffs may attempt to twist certain testimony of Supovitz into creating a right to take Jones' testimony because of Jones' knowledge and/or awareness of the NFL's concerns that the temporary seats would not be completed on time. Supovitz testified as follows:

> Q Well, when January 30th, 2011, came, were you concerned
> that the seats weren't done as they were supposed to be?
> **A No. Of course I was concerned about it, and I surfaced**
> **those concerns to the Cowboys, to Cowboys Stadium,**
> **specifically, as well as to the contractor. And we were given**
> **assurances almost daily, and sometimes more than once a day,**
> **that they would be completed.**
> Q Aside from getting assurances, did you do anything to
> address this issue that the seats were not in a week in
> advance?
> **A Yes. And on at least on two occasions, I contacted**

> **Mr. Jones --**
> Q Which Mr. Jones?
> **A I'm sorry. Mr. Jerry Jones.**
>
> Q Okay.
> **A -- and in one case, Charlotte Anderson, also with the**
> **Cowboys, to let them know that the seats were not completed at**
> **the time that was indicated in the contract and that they**
> **should use all means to make sure that they do get installed**
> **by that point safely and approved so that we do have the full**
> **complement by game day.**

*See* Transcript of Jury Trial, Volume 1, Tuesday, March 3, 2015 at 132:12-133:7.

However, a similar argument was made by these same Plaintiffs' attorneys in *Greco,*[11] and the Court, under identical claims with nearly identical allegations, found that Jones' testimony was "unwarranted."[12]   In fact, the Honorable Magistrate Judge Toliver stated:

> "Moreover, much of the testimony that Plaintiffs seek pertains to issues which they have deposed (or could have deposed) other persons about, namely the temporary seating, the video replay board, Jones's decision to try to break the Super Bowl attendance record, and the management of the temporary seating situation before, during, and after the game."

*See* Order attached as Exhibit "A" to the Appendix [Docket No. 407] at pg. 9.

As such, Jones respectfully requests that the Court grant his Motion and issue an order protecting him from testifying in this matter.

### D. Nothing has Changed Since Trial Began; Nothing has Changed Since Magistrate Judge's February 4, 2015 Ruling.

Finally, none of the trial testimony provided to date is new to Plaintiffs.  In fact, Plaintiffs offered Frank Supovitz by video deposition.[13]   The same testimony, the same allegations, the

---

[11]     *See* Order attached as Exhibit "A" to the Appendix [Docket No. 407] (stating that "[a]dditionally, Plaintiffs assert that (1) Jones was the driving force behind an attempt to break the Super Bowl attendance record at all costs, which triggered the sequence of events resulting in the seating problems; and (2) Jones was aware of problems getting the temporary seating installed in time for the game.").

[12]     *Id.*

[13]     *See* Transcript of Jury Trial, Volume 1, Monday, March 2, 2015 at 233.

same claims, and the same arguments made by the same attorneys was made and rejected by Magistrate Judge Toliver on February 4, 2015 when Plaintiffs attempted to take Jones' testimony in the *Greco* matter.  The same ruling should be found in the instant case.

III.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, for the reasons set forth above, Jones respectfully requests that this Court to grant his Motion to Quash and for Protective Order regarding Plaintiff's subpoena in this matter, award him his fees and costs relating to this motion, and grant such other and further relief as the court may deem just and proper.

DATED: March 4, 2015

> Respectfully submitted,
>
>  /s/ Levi G. McCathern, II
> Levi G. McCathern, II
> State Bar No. 00787990
> lmccathern@mccathernlaw.com
> Paul A. Grinke
> State Bar No. 24032255
> pgrinke@mccathernlaw.com
> Jesse Hoffman
> State Bar No. 24058801
> jhoffman@mccathernlaw.com
>
> McCATHERN, PLLC
> 3710 Rawlins St., Suite 1600
> Dallas, Texas 75219
> 214-741-2662
> 214-741-4717 facsimile
>
> **ATTORNEYS FOR JERRY JONES and THE COWBOYS ENTITIES**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed with the Court on this 4th day of March, 2015, using the ECF system, and the Clerk of the Court has electronically served the Notice upon all parties registered to receive electronic notice in this case.

R. Jack Ayres, Jr.
Christopher S. Ayres
LAW OFFICES OF R. JACK AYRES, JR., P.C.
4350 Beltway Dr.
Addison, TX 75001

George Bramblett
R. Thaddeus Behrens
Daniel H. Gold
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

Michael J Avenatti
EAGAN AVENATTI, LLP
450 Newport Center Dr., 2nd Floor
Newport Beach, CA 92660

_____/s/ Levi G. McCathern, II_____